# Richmond.

## HURST v. DULANY.

APRIL 5th, 1888.

Absent, Richardson, J.

1. OYSTERS—*Assignment of water front.*—Under ch. 254, § 6, Acts 1883-84, there can be but one assignment for planting oysters. If there has been an assignment to the tenant (occupier), the owner is not entitled to another assignment on the same water front, and such assignment is void.

2. IDEM—*Unoccupied front.*—Under said section 6, the inspector is not bound first to assign an unoccupied portion of the water front.

3. UNLAWFUL DETAINER—*Instructions.*—In action to recover possession of the oyster bottom assigned plaintiff under said § 6, it was improper for the trial court to instruct the jury that, if they believed the plaintiff was in possession of this bottom under the assignment, they should find for him.

4. IDEM—*Nullum tempus.*—At trial of said action an instruction based on the idea that the defendant might resist the claim of the State to the oyster bottom in question by proof of long possession thereof was improper, as time runs not against the State.

Error to judgment of circuit court of Northumberland county, rendered April 28th, 1887, in an action of unlawful detainer, wherein R. H. Dulany (the defendant in error) was plaintiff, and Thomas B. Hurst (the plaintiff in error) was defendant. Opinion states the case.

*R. M. Mayo,* for the plaintiff in error.

*Guy & Gilliam,* for the defendant in error.

LACY, J., delivered the opinion of the court.

This was an action of unlawful detainer by Dulany, the defendant in error, against Hurst, the plaintiff in error, for a section of oyster bottom in Northumberland county on the west shore of the Chesapeake bay. Dulany being the owner of a farm called "Bluff Point," in said county, and lying on the said bay, had rented the same to one Snowden Hall, who has been the occupier of the same for fifteen years. Under the sixth section of the act for the preservation of oysters (chapter 254, Acts 1883–84), Hall had procured from the inspector an allotment of nine hundred yards, while the defendant, Hurst, held one thousand eight hundred yards, making two thousand seven hundred yards, for which the State received an annual rental of twenty-five cents per acre. In this state of affairs, Dulany applied to the inspector to have one-fourth of this shore assigned to him as the owner of the Bluff Point farm. Hurst objected upon the ground that his oysters were already planted on this bottom, and that he was paying an annual rent to the State therefor, as the law required, and that, under the law, more than one-fourth of this bottom had already been allotted to the occupier of the Bluff Point farm, which had exhausted the oyster privileges of that farm under the law. But the inspector, nevertheless, allotted to Dulany one-fourth of the shore and bottom occupied by Hurst with planted oysters, and, Hurst refusing to surrender the same, this action is brought to recover it. On the trial the evidence was taken, in substance, as above stated; instructions asked on the part of the defendant, and refused, and exceptions taken; and the jury instructed by the court in accordance with the views of the plaintiff, when the defendant again excepted. There was a verdict for the plaintiff, and the defendant moved for a new trial on the ground of misinstruction by the court, and that the finding was contrary to the evidence, and in arrest of judgment for the same reasons; but the court overruled the

motion, and rendered judgment on the verdict; whereupon the case was brought to this court by writ of error.

The first assignment of error which we will consider, is that the court refused to give the eighth instruction asked by the defendant, to the effect that, if the occupier of this Bluff Point farm had already had any of this shore assigned to him, this exhausted the oyster privileges of this farm granted by the law on account of·said farm, and no more could be assigned on that account. The law provides (sec. 6, ch. 254, Acts 1883–4, p. 325) that, "if any owner or occupier of land having a water front thereon suitable for planting oysters, shall be desirous of obtaining a location thereon for planting them, he may make application to any inspector for the county in which he resides, who shall assign to him, on such location as such owner or occupant may designate in front of his land, a quantity sufficient for the said purpose, to be judged of by said inspector, subject to appeal to the county court," such assignment not to exceed one-fourth of the whole of such front; the inspector to receive a fee of one dollar, and a rent of twenty-five cents per acre to be paid to the State, (and not one dollar and twenty-five cents per acre, as is insisted by the counsel for the defendant in error.) If, at the time of this assignment, any oysters are already planted there, the oyster planter is to have eighteen months to remove them. We think it is perfectly clear, from the plain provisions of the law, that this privilege which is accorded to the owner or occupier of the farm of selecting oyster ground in his front is not intended to be exercised twice. The provision is, "owner or occupier; " either may claim the privilege, as the case may be, but both may not, under this law; and if the occupier has already selected, and holds the allotment, the provision of the law on the subject is exhausted. · The privilege is accorded because of the increased taxable value of the land growing out of its location; but the law grants it once only, and under restrictions, then not to exceed one-fourth; whereas, in this case, the occupant had already received, and had planted and held, more than

one-fourth of the whole. When Dulany comes in, and demands and receives his choice out of the best lands of Hurst, this is not authorized by law, and is especially unjustifiable in this case both as to demand, and the compliance therewith, in view of the fact established by the evidence that Dulany already held the best oyster bottom—three times as much as was assigned him—in the bottom of his creek, which, being wholly within his survey, is his private property, and not liable to be interfered with either by assignment or revocation, or by rent tax. And it is clear that the circuit court erred in refusing to give this instruction.

The court also erred in the instruction to the jury to the effect that if they believe that the plaintiff was in possession of this *fundum*, under the allotment, they should find for him, (the said plaintiff). The ground of the action was that the defendant unlawfully withheld the possession of the premises; and, unless this were so, there was no ground for the action, and the verdict must have been for the defendant.

If the sixth instruction referred to the *fundum* in the creek within the survey of Dulany's farm, then, under the law, it was properly refused, however just it might appear in an abstract view. The law does not undertake to estimate or interfere with this, as it is not regarded as part of the public domain.

The seventh instruction, that unoccupied oyster bottom must be first assigned, was properly overruled, as the law expressly provides that the owner or occupier may select his portion, and, if already planted on, the oysters thereon may be removed within eighteen months.

The third and fourth instructions were properly refused, as the time during which Hurst had held this possession was wholly immaterial as against the commonwealth. The statute of limitations does not apply to the commonwealth.

The first and second instructions asked for by the defendant were properly refused. They seek to set up in Hurst an adverse right against the commonwealth, on account of some

supposed right said to exist in whomsoever may be entitled to claim under Lord Fairfax's devisee, Denney Martin. This defence cannot be set up by Hurst. First. The defendant could not dispute the title of the commonwealth from which he had rented, and to which he paid rent annually. Second. The commonwealth has had for many years possession of the premises, and there was no evidence tending to show the contrary, and the right of the commonwealth therein is expressly declared in the act of February 16, 1819, (1 Rev. Code, p. 341). Third. There appears to be no ground to set up any adverse claim in Lord Fairfax, or those claiming under him, for the benefit of Hurst, since the act of December 10, 1796, (1 Rev. Code 1819, p. 352,) by which, and the compromise claimed to be effected thereunder, the devisees of Lord Fairfax, or those claiming under them, relinquished all claim to lands supposed to lie within the Northern neck, which were waste and unappropriated at the time of the death of Lord Fairfax, upon relinquishment by the commonwealth of all claim to any lands specifically appropriated by the said Lord Fairfax to his own use, either by deed or actual survey.

It follows that the plaintiff, Dulany, had no lawful claim whatever to the lands or bottoms claimed in his summons, the action of the inspector in the premises having been wholly without authority of law, and an unauthorized infringement of the rights of Hurst, which, although revocable by the legislature, are not so revocable at the will of the inspector; and the circuit court should not have so instructed the jury, as matter of law, and directed a verdict for the defendant.

We are therefore of opinion that, for the errors aforesaid, the judgment of the said circuit court will be reversed and annulled, and such judgment rendered here as the said circuit court ought to have rendered.

Judgment reversed.