# Richmond.

## MEARS & LEWIS v. DEXTER.

### APRIL 17th, 1890.

1. APPEAL—*Notice—Jurisdiction.*—Code, sec. 3457, providing that notice of intention to apply for transcript of record, with a view of applying for an appeal or writ of error: *held,* merely directory, and not a limitation upon the jurisdiction of this court.

2. IDEM—*Rule of decision—Retrospective law.*—Act February 7, 1890, amending Code 1887, sec. 3484, requires the appellate court to look first to the proceedings and the whole evidence on the first trial; and if there be error in setting aside the verdict on that trial, to set aside and annul all proceedings subsequent to said verdict, and to enter judgment thereon. *Held,* the rule of this act, which operates retrospectively, applies to all cases which, though decided by the court below before, yet comes before this court on error since the passage of said act.

3. UNLAWFUL ENTRY.—Plaintiff being in actual possession when defendant entered, and the entry being unlawful, plaintiff is entitled to recover possession of the premises, any possession being a legal possession against a wrong-doer.

Error to judgment of circuit court of Warwick county, affirming judgment of county court rendered January 9, 1888, in an action of unlawful entry and detainer, wherein C. C. Dexter was plaintiff and William H. Mears and Alfred Lewis (the plaintiffs in error), were defendants. Opinion states the case.

*M. T. Hughes* and *White & Garnett,* for the plaintiff in error.

*A. S. Segar* and *Thomas Tabb,* for the defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action of unlawful entry and detainer in the county court of Warwick county. The defendant in error here was the plaintiff below. The action was brought to recover certain oyster grounds which, in May, 1885, were assigned to the plaintiff by G. W. Fitchett, oyster inspector for the said county, pursuant to the provisions of the amendatory act of August 27, 1884. Acts 1884 (extra ses.), p. 37; Code, sec. 2137.

There were two trials in the county court. Upon the first trial there was a verdict for the defendants, which, on motion of the plaintiff, was set aside as being contrary to the evidence, whereupon the defendants excepted. At the next trial, a jury being waived, the case was submitted to the court, which gave judgment for the plaintiff; and this judgment having been afterwards affirmed by the circuit court of Warwick county, the case, on a writ of error, was brought to this court.

The first question to be considered is, has this court jurisdiction of the case? Its jurisdiction is denied by the defendant in error, because the transcript of the record is not accompanied by a certificate of the clerk of the circuit court stating that notice of the intention to apply for the transcript was given, as required by sec. 3457 of the Code. That section provides that the person intending to apply for a transcript of the record, with a view to applying for an appeal or writ of error, "shall notify the opposite party, or his counsel, if either reside in this state, of his intention; and no clerk of any court shall make out and deliver such transcript unless it is made to appear that such notice was given. A certificate of the clerk stating the fact," it is further provided, "shall, in every case, accompany the transcript when presented to an appellate court or judge."

We are of opinion, however, that these provisions of the statute are directory merely, and hence not designed as a limitation of the jurisdiction of the appellate court. The statute, although it requires a certificate that notice was given, does

not declare that if such certificate is not given, the transcript shall be void, or that the appellate court or judge shall not take cognizance of the case; and if such had been the intention of the legislature, it would doubtless have been expressed in clear and unmistakable terms. The object of the legislature, as is evident from the preceding part of the section, was to require the transcript to contain so much, and so much only, of the case as to enable the appellate court or judge to intelligently pass upon it, and the provisions just quoted were simply in furtherance of that object. In other words, they prescribe rules for the guidance of the clerk and parties in making up the record, and which ought to be followed, but observance of which is not made essential either to the validity of the transcript or the jurisdiction of the appellate court.

This is made more manifest from the sections immediately following. Thus, sec. 3458 provides that in no case shall certain specified portions of the record be copied into the transcript unless the clerk is specially directed in writing so to do; and by sec. 3459 it is provided that where the parties or their counsel cannot agree as to what shall be copied, the question may be referred to the judge of the court in which the case was decided, by whose instructions in the matter the clerk shall be governed.

"In respect to statutes, it has long been settled," says Judge Cooley, "that particular provisions may be regarded as directory merely; by which is meant that they are to be considered as giving directions which *ought* to be followed, but not as so limiting the power in respect to which the directions are given that it cannot be effectually exercised without observing them." Cooley, Const. Lim., 74. In *Rex* v. *Loxdale*, 1 Burr., 447, Lord Mansfield said that there is a known distinction between circumstances which are "of *the essence* of a thing required to be done" by an act of Parliament, and clauses merely directory; and the doctrine of this and similar cases was approved in *French* v. *Edwards*, 13 Wall., 506, where the court said: "There

are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their powers or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected."

In treating of the same subject, a learned writer states the rule thus: "When statutes direct certain proceedings to be done in a certain way or at a certain time, and a strict compliance with these provisions of time and form does not appear essential to the judicial mind, the proceedings are held valid, though the command of the statute is disregarded or disobeyed. In these cases, by a somewhat singular use of language," he adds, "the statute is said to be *directory*. In other cases the statute is held to be imperative or mandatory." Sedg. St. & Const. Law (Pom. ed.), 316.

The author cites a number of cases in illustration of the rule, among them *Rex* v. *Inhabts. of Birmingham*, 8 B. & C., 29, in which case a statute requiring the consent of the father, if living, to the marriage of a child under age, was held to be directory only, Lord Tenderden saying, "The language of this section is merely to require consent; it does not proceed to make the marriage void if solemnized without consent." So in *Cole* v. *Green*, 6 Man. & G., 872, where a paving act authorized commissioners to enter into certain contracts, and provided that the contracts should be signed by the commissioners, it was held that the latter provision was not essential or mandatory, but directory, and, therefore, that a contract signed otherwise than in the manner pointed out, was not, on that account, void. So, in a New York case where a school tax was voted at a meeting of which no notice was given, as required by statute, and afterwards levied, the act was held to be directory merely, and the tax well laid. *Marchant* v. *Longworthy*, 6 Hill, 646, affirmed on appeal, 3 Denio, 526.

It is sometimes said that whether a statute is directory or mandatory depends upon whether it contains affirmative or negative words; that words of the former class are directory merely, whereas negative words will make a statute imperative. But this is not a safe test in all cases, for no matter what the words are, the intention of the legislature, when that can be ascertained, must govern; and if the intention be to make compliance with the statute essential to the validity of the proceedings, then the statute is mandatory, otherwise it is not; or, as it was expressed in *Corbett* v. *Bradley*, 7 Nev., 108: " If it be clear that no penalty was intended to be imposed for a non-compliance, then it is but carrying out the will of the legislature to declare the statute in that respect directory. But if there be anything to indicate the contrary, a full compliance must be enforced."

Tried by this test, the motion to dismiss for want of jurisdiction must be overruled.

Another question is, in what light is the case to be viewed by this court? As already stated, there were two trials in the county court, upon the first of which there was a verdict for the defendants, which was set aside as being contrary to the evidence, and the evidence (not the facts) is certified. The final judgment of the county court, which was rendered on the 9th of January, 1888, was affirmed in the circuit court on the 5th of February, 1889. On the last-mentioned day the present Code was in force, section 3484 of which required the plaintiff in error, in cases like the present, to occupy the attitude of a demurrant to the evidence, notwithstanding the verdict on the first trial was in his favor.

That section, however, has been amended by the act approved February 7, 1890, which requires the appellate court to look first to the proceedings and the whole evidence on the first trial, and, if there be error in setting aside the verdict on that trial, to set aside and annul all proceedings subsequent to the said verdict, and enter judgment thereon. This is the rule

Opinion.

of decision announced in *Muse* v. *Stern*, 82 Va., 33, before the adoption of the Code, and it applies to the present case, although the amendatory act was passed after the judgment of affirmance had been rendered by the circuit court. It was clearly the intention of the legislature that the act should operate retrospectively, and it is equally clear that it was within the constitutional power of the legislature to give it that effect. *Southwest Va. Imp. Co.* v. *Smith's Adm'r*, 85 Va., 306.

The rule, however, is of no practical importance in the present case, for the evidence, viewed in any light, shows a clear case for the plaintiff, and, therefore, that the verdict on the first trial was rightly set aside.

The grounds in controversy were duly assigned to the plaintiff on the 10th of May, 1885, and he held undisputed possession thereof until the entry of the defendants in September, 1886. The grounds are described in the written assignment of the inspector as containing twelve acres, more or less, and bounded as follows: " On the N. W. by Newport News Swash channel ; on the N. E. by the oyster grounds of Mr. Darling ; on the S. E. by Newport News bar, and on the S. W. by James river." The evidence shows, moreover, that the location was actually staked off by the plaintiff, and that the stakes were regularly kept up, although they were occasionally swept away by the winds and tides, and that he planted oysters on the grounds.

It does not appear, however, nor is it pretended, that he paid to the state more than one year's rent, and upon this fact the defendants chiefly rely in their petition of appeal. But conceding that no more than one year's rent was paid, that does not affect the case. The plaintiff was in actual possession when the defendants entered, and that entry being unlawful, he is entitled to recover. The remedy for a forcible or unlawful entry or detainer was designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion,

and to afford summary redress and restitution. And the rule applies as well to public as to private lands, for although there can be no adversary possession against the commonwealth, yet a person in actual possession of land of the commonwealth is entitled to all the remedies which the law provides for the protection of the actual possession against tort feasors. Any possession, it has been held, is a legal possession against a wrong-doer. *Olinger* v. *Shepherd*, 12 Gratt., 462; *Power & Kellog* v. *Tazewells*, 25 *Id.*, 786; *Davis* v. *Mayo*, 82 Va., 97; *Fore* v. *Campbell, Ibid.*, 808.

Besides, if the plaintiff was in default with respect to the payment of rent, that was a question between him and the state, and not one with which the defendants were concerned. But in point of fact, the entry of the defendants was before the rent for the second year became due.

At the trial, the defendants, to maintain the issue on their part, introduced in evidence an assignment by the oyster inspector of Warwick county, but the grounds embraced in that assignment are described as being "opposite the Parrish farm," whereas the grounds assigned to the plaintiff are opposite what is known as "the Buck farm." They also offered in evidence a written receipt dated September 28, 1886, purporting to be a receipt signed by Henry F. Jones, oyster inspector, for rent of thirty acres of oyster grounds, and offered evidence tending to show that these were the grounds in dispute. But the plaintiff objected to the introduction of the evidence, and the objection was sustained.

It does not appear that any assignment of the grounds mentioned in the receipt was made by Jones to the defendants, and it is certain his receipt, even if he were a duly qualified officer, which is denied, could not affect the title or the right of possession of the plaintiff. *Hurst* v. *Dulaney*, 84 Va., 701. The evidence was, therefore, rightly excluded, and the judgment affirming the judgment of the county court must be affirmed.

Judgment affirmed.