𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## NORFOLK AND WESTERN RAILWAY COMPANY V. A. C. ALLEN AND SONS.

### March 21, 1918.

1. NEW TRIAL—*Motion Before Law Judge not Before Chancellor.*— In a court which has both common law and chancery jurisdiction, and in which the same judge administers both, it is immaterial before which branch of the court a motion to set aside the verdict upon an issue out of chancery and award a new trial is made.

2. APPEAL AND ERROR—*Issue of Fact—Depositions—Evidence.*—In a suit for damages for diminution of water power, where an issue to a jury was awarded to determine the amount of damages to be awarded to the plaintiffs for the injuries sustained, the Supreme Court of Appeals will not treat the evidence adduced on the trial of the issue as though it had been given in the form of depositions.

3. APPEAL AND ERROR—*Reversal—Finding of Jury.*—In a case where there was no certain standard for the admeasurement of the damages to be assessed, and there was serious conflict in the testimony as to the amount of the damages inflicted, an issue of fact was awarded. The sole question submitted to the jury was the amount of damages to be awarded the plaintiffs for the injury sustained and to be sustained, by reason of the acts done and proposed to be done by the defendant. No other question was submitted to them. Their assessment of the damages was approved by the trial court, and where this is the case, and no error is pointed out in the action of the court or the conduct of the case, the finding of the jury will not be disturbed unless it is palpably and obviously erroneous, or is without evidence to support it.

4. DAMAGES—*Mitigation of Damages.*—In a suit for damages for diminution of plaintiffs' water power by defendant, evidence was properly excluded as to how the injury done by the defendant to the plaintiffs might have been minimized in the past, as no one is under obligation to undertake to minimize a threatened or an intermittent voluntary trespass.

5. DAMAGES—*Mitigation of Damages—Trespass.*—The owner of

property is not obliged to so use his own property that another may not injure it. If an injury is merely threatened, no action lies for the threat, and the property owner is under no obligation to attempt in advance to minimize the results of a wrong which may never be inflicted. If the injury is intermittent and recurrent, entire damages cannot be recovered in a single action, as the injury may never be repeated, and for that reason there is no duty resting upon the party injured to attempt to minimize its consequences. But where the injury is permanent in its character and continuous in its consequences, entire damages may be recovered in a single action, and the duty rests upon the injured party to minimize its consequences if it can be done at moderate expense and by the exercise of ordinary care.

6. TRESPASS—*Eminent Domain.*—A railroad company is no less a trespasser when it diminishes the water power of a mill owner because it intended to exercise its right of eminent domain than if it entertained no such intention.

7. TRESPASS—*Eminent Domain—Duty of Landowner—Minimizing Damages.*—In such a case every time it diminished the plaintiffs' supply of water to their detriment it committed a new trespass, and while the nature of its pumping station indicated that it would probably continue to trespass upon the plaintiffs' property, the latter were under no obligation to presume that it would continue to do so, without compensation, nor to undertake to minimize the results of a wrong that might terminate at any instant. They had no right to assume that the railroad company would continue to illegally inflict an injury upon them.

8. DAMAGES—*Trespass—Eminent Domain—Measure of Damages.*— In a suit by a mill owner against a railroad for damages for diminution of his water power, the case stood in all essential particulars, so far as the measure of damages was concerned, as a proceeding to condemn the water for the use of the defendant, and the measure of damages is the difference between the market value of the mill property before and after the injury. The damages should not be based on the evidence of the amount of the horse-power lost, and an estimate of the value of that horse-power at the mill by comparing the horse-power at another place, and under different conditions, and a calculation of what sum put at interest at six per cent. would produce an income equivalent to that loss.

9. EXEMPLARY DAMAGES—*Argument of Counsel—Going Outside of the Record.*—In a case in which exemplary or punitive damages are properly allowable, evidence of the wealth of the defendant may be introduced, and such evidence is a legitimate

subject of proper comment, for what would be punishment to a poor defendant would be no punishment at all to one of wealth and affluence. But it is never permissible for counsel to go outside of the record and testify as to matters not given in evidence, nor, in any case, to make use of language calculated to inflame the minds of the jurors and induce a verdict not founded solely on the evidence adduced before them.

10. ARGUMENT OF COUNSEL—*Statements Calculated to Inflame the Minds of Jurors.*—The Supreme Court of Appeals has more than once reprobated in no uncertain terms the practice of injecting into arguments of counsel statements calculated to inflame the minds of jurors, and tending to produce verdicts as a result of prejudice rather than a calm consideration of the evidence. Every litigant, natural or artificial, is entitled to a fair and impartial trial, and there should be excluded from the tribunal which is to try the case, whether judge or jury, everything that has no tendency to aid such tribunal in doing impartial justice between the litigants.

11. ARGUMENT OF COUNSEL—*Financial Standing of Defendant.*—In an action against a railroad company for diminution of plaintiffs' water power, there was no evidence before the jury as to the wealth of the defendant, but counsel for plaintiffs in his address to the jury was allowed to comment over defendant's objections upon the great wealth of the defendant and its disregard of the law of God and man.

*Held:* Error.

12. WATERS AND WATERCOURSES—*Diminution of Water Power—Exemplary Damages.*—In the case at bar the defendant railroad company continued the diminution of plaintiffs' water supply, after a judgment for plaintiffs was affirmed by the Supreme Court of Appeals. The evidence in the case, however, did not show that the railroad company was actuated by malice, wantonness or oppression, or that there was any fraud on its part, or that it was guilty of any gross negligence or recklessness, or that its action in continuing to take the water, after the order of the Supreme Court of Appeals had been certified to the circuit court, until arrangements were made to settle the controversy, evinced any intention on the part of the railroad company to disregard the rights of the plaintiffs, or to defy the law of the land. Unless one or the other of these situations existed, the plaintiffs had no right to recover punitive damages.

Appeal from a decree of the Circuit Court of Prince Edward county. Decree for complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*F. S. Kirkpatrick,* for the appellant.

*E. Warren Wall* and *W. M. Justis, Jr.,* for the appellees.

BURKS, J., delivered the opinion of the court.

The facts of this case are as follows: Prior to 1901 the railroad company had been taking water from Lockett's creek with a pump having a five-inch intake and four-inch discharge pipe. About 1901 or 1902 it changed the location of its tank and pumping-station, and also increased the pipes connected with the pump, so as to have a six-inch intake and five-inch discharge pipe. In 1901 the Allens bought a mill site on the creek below the pumping-station and erected thereon and equipped a mill for grinding wheat and corn, and sawing lumber. It is not claimed that the water taken from the creek at that time or at any time prior to 1907 in any way injured Allen & Sons. The pumping-station was lawfully erected for the purpose of supplying the needs of the company, and it continued to take the water as formerly from the creek. In 1907, however, the traffic on the railroad increased to such an extent that it was necessary to take more water from the creek, and from 1907 to 1912 it was claimed that the water taken from the creek so diminished the supply as greatly to injure Allen & Sons, and in the latter year they brought an action at law against the railroad company to recover damages for the previous five years, and also filed a bill for an injunction to enjoin the railroad company from further taking water from the creek. As the railroad company was a public service corporation, and the water was necessary for its purposes the injunction was denied, but the case was continued on the docket. At the trial of the action at law there

was a verdict and judgment in favor of the plaintiffs for
$4,000. To this judgment a writ of error was awarded by
this court, and, on the hearing, the judgment of the trial
court was affirmed. A petition for a rehearing was filed
and the case was reheard and decided January 13, 1916,
reaffirming the judgment of the trial court. The principal
question then involved was whether or not the injury done
to the plaintiffs was permanent and continuous, or was in-
termittent, and it was held by this court that the injury
inflicted on the plaintiffs did not consist in the installation
of the pumping machinery, but in taking the water from
the stream, and as this might be stopped at any time, and
was intermittent at all times, entire damages could not be
recovered in one action, but that each successive unlawful
taking of the water gave the plaintiffs a new cause of
action. *Norfolk & Western R. Co.* v. *Allen,* 118 Va. 428,
87 S. E. 558.

The judgment of this court was certified to the circuit
court in February, 1916. On August 24, 1916, Allen & Sons
instituted a new action against the railroad company to
recover, it is said, for the damages sustained since the
former recovery, but the declaration is not copied into the
record, and we have no means of ascertaining accurately
the exact extent of their claim. There was then pending
the chancery suit praying an injunction which had been in-
stituted simultaneously with the first action for damages,
and this second action for damages.

It was stated by counsel for the railroad company both in
his brief and in the oral argument in this court, and not
denied by opposing counsel, that at this juncture, the rail-
road company, which had the right to condemn the water,
proposed to institute condemnation proceedings for that
purpose, but finding that the suit in equity was still on the
docket, as also the second action at law, and that complete
justice might be done in those cases and a multiplicity of

608 NORFOLK & W. R. CO. v. ALLEN, 122 VA. 603.

actions avoided, proposed that the whole question should be settled by issues to be ordered in the chancery suit. The suggestion was made therefore to the court that the litigation should take this form. This suggestion was accepted, as appears from the opinion of the circuit court, and thereupon an order was entered in the circuit court on the chancery side, directing "that a jury be empanelled at the bar of this court to report to the court for its consideration in said chancery cause its finding upon the following issues, (1) what sum of money, if any, the plaintiffs should recover as damages for the diversion of the water by the defendant from Lockett's creek, from the third day of July, 1912, to the date of the trial of this issue; and (2) what damages, if any, will the plaintiffs sustain in future by the continued diversion of water by the defendant from said stream."

It will be observed that both of these issues were confined to the actual damages sustained, or to be sustained, by the Allens. Whether or not punitive damages were claimed in the declaration we have no means of knowing, as the declaration is not copied into the record. The subject was not remotely referred to in the order for the issue. In response to these issues, the jury awarded $4,417.00 for the damage actually sustained, and $5,933.33 for the damage to be sustained. These issues were tried on the law side of the court, and the verdict was certified to the court on its chancery side. A decree was entered against the defendant for the amounts in the chancery suit, and it is from that decree that the present appeal is taken.

A number of exceptions were taken to the action of the trial court during the progress of the trial, but it is not deemed necessary to pass upon them all. We shall notice such only as seem to be material and necessary for the guidance of the trial court on another trial.

It is insisted by the appellees that the appellant has no

standing in this court because the motion to set aside the verdict and award a new trial was made before the law judge and not before the chancellor. The circuit court has both common law and chancery jurisdiction, and the same judge administers both. It is immaterial before which branch of the court the motion is made. This was settled in *Meade* v. *Meade,* 111 Va. 451, 69 S. E. 330, which is very similar to the instant case.

Counsel for the appellant insist that we shall consider this case as an appeal in any other chancery case, and treat the evidence adduced on the trial of the issue as though it had been given in the form of depositions. He says, amongst other things, "your petitioner does not wish this case sent back for further hearing, but asks it may be treated as a chancery cause, and a final decree entered in this court such as should have been entered in the court below." It is an all sufficient answer to this request to say that it was pre-eminently a case for the award of an issue by the trial court, and it would have been error not to have awarded it. The case, in this respect, does not stand on any different footing from other suits in chancery wherein an issue of fact is properly awarded. There was no certain standard for the admeasurement of the damages to be assessed, and there was serious conflict in the testimony as to the amount of the damage inflicted. The sole question submitted to the jury was the amount of damages to be awarded the plaintiffs for the injury sustained and to be sustained, by reason of the acts done and proposed to be done by the defendant. No other question was submitted to them. Their assessment of the damages was approved by the trial court, and where this is the case, and no error is pointed out in the action of the court or the conduct of the case, the finding of the jury will not be disturbed unless it is palpably and obviously erroneous, or is without evidence to support it. *Barbour* v. *Melendy & Russell,* 88 Va. 595, 14 S. E. 326, and cases cited.

Several exceptions were taken to rulings of the trial court excluding the testimony of alleged experts who were offered to show how the injury done by the defendant to the plaintiffs might have been minimized in the past, or might be in the future. As to past injuries the evidence was properly excluded, as no one is under obligation to undertake to minimize a threatened or an intermittent voluntary trespass. The owner of property is not obliged to so use his own property that another may not injure it. If an injury is merely threatened, no action lies for the threat, and the property owner is under no obligation to attempt in advance to minimize the results of a wrong which may never be inflicted. If the injury is intermittent and recurrent, entire damages cannot be recovered in a single action, as the injury may never be repeated, and for that reason there is no duty resting upon the party injured to attempt to minimize its consequences. But where the injury is permanent in its character and continuous in its consequences, entire damages may be recovered in a single action, and the duty rests upon the injured party to minimize its consequences if it can be done at a moderate expense and by the exercise of ordinary care. Compare *Norfolk County Water Co.* v. *Etheridge*, 120 Va. 379, 91 S. E. 133; *McHenry* v. *City* of *Parkersburg*, 66 W. Va. 533, 66 S. E. 750, 29 L. R. A. (N. S.) 860. The owner of a dwelling is under no obligation to remove his furniture therefrom because some one has threatened to burn it, in order thereby to minimize the threatened loss, nor to provide wire screens for windows because through negligence of others a baseball occasionally breaks his glass. In each of these cases the trespasser must pay the entire proximate loss.

The railway company was no less a trespasser because it intended to exercise its right of eminent domain than if it had entertained no such intention. *Norfolk & Ocean View Ry. Co.* v. *Turnpike Co.*, 111 Va. 131, 68 S. E. 346, Ann.

Cas. 1912 A, 239. Every time it diminshed the plaintiffs' supply of water to their detriment it committed a new trespass, and while the nature of its pumping-station indicated that it would probably continue to trespass upon the plaintiffs' property, the latter were under no obligation to presume that it would continue. to do so, without compensation, nor to undertake to minimize the results of a wrong that might terminate at any instant. They had no right to assume that the railroad company would continue to illegally inflict an injury upon them. *Norfolk & Western R. Co.* v. *Allen, supra.* Had they acted upon such assumption, and the company had ceased to take the water, all sums expended to minimize the loss would have been uselessly expended, without the right of recovery over against any one. The rule is otherwise, however, where the injury is complete and its consequences continuous. In such case the party injured must use reasonable care to protect his property from further injury, provided it can be done at moderate expense. *Stonega Coal Co.* v. *Addington,* 112 Va. 807, 73 S. E. 257, 37 L. R. A. (N. S.) 969. Thus if one should cut a hole in my roof thereby permitting the rain to come in, and I have knowledge of the fact; I must within a reasonable time have it repaired and thereby minimize the loss I would otherwise sustain, else I cannot recover the resulting damage from the trespasser.

We deem it unnecessary to discuss the ruling of the court as to its effect on future damages, as, in our opinion, the case was proceeded with in the trial court on the wrong theory as to the measure of damages in a case of this nature. In this aspect of the case, it stood in all essential particulars, so far as the measure of damages was concerned, as a proceeding to condemn the water for the use of the defendant. On the trial in the circuit court, the plaintiffs were permitted to offer evidence of the amount of horse-power lost, and to estimate the value of that horse-power

at the mill by comparing the horse-power at another place, and under different conditions and then to calculate what sum put at interest at six *per cent.* would produce that income, and much more evidence of a purely speculative nature.

The plaintiffs filed with their testimony the following statement of their claim for future loss, if no change was made to obtain additional water power.

"Estimated for future loss if mill cannot be successfully changed:

Value of mill as going concern, with good wheel,
on basis of five years...................$14,060.00

*Additional Profits.*

Loss of 2 1-2 h. p.  Value of 1 h. p. 54c per day,
1 year $162.00, 2 1-2 h. p. per day for one year,    356.00
Sum necessary to provide $356 at 6%.........   5,933.33

                                             $19,933.33
Value of mill at present....................   5,000.00

        Balance  ........................$14,933.33"

The plaintiffs thereupon claimed as their damages on that account $14,933.33.

Just how that statement was of value to the jury in ar- is not made so by the evidence of the witnesses, or the argument of counsel, but it need not be further considered. The jury in fact allowed for the future damages $5,933.33. This sum was the exact sum claimed by the plaintiffs as the value of 2.2 horse-power lost, but the price is fixed at 54 cents per day without any fixed data upon which to base it except the opinion of a witness who had no adequate information on the subject.  He testified to the value of an electric horse-power furnished in the city of Lynchburg by the

Lynchburg Light and Traction Co., but was not "able to say what is the value of horse-power at Prospect, at Mr. Allen's Mill," but knew it could not be furnished at the Lynchburg price, because had tried it without success. The estimates of this witness, however, were purely speculative, based upon insufficient data, and their adoption by the jury necessarily resulted in a speculative verdict.

It is not claimed that the water sought to be condemned, in the instant case, is of any special value except as a motive power for the plaintiffs' mill, or that the mill site, or any of the property affected, has any peculiar or prospective value other than its present use. All that the plaintiffs claim is that their mill is damaged by the diminution of the water supply by the acts of the defendant; that they have not the power they formerly had, and that the defendant should either cease to take the water, or else make compensation therefor. This presents the ordinary case of a permanent injury by the defendant to the real estate of the plaintiffs. There are cases where the market value of property is not affected by the trespass complained of, or is even enhanced, and the owner is still entitled to recover (*Virginian R. Co.* v. *London*, 114 Va. 334, 76 S. E. 306), but this is not one of them. In the instant case, the measure of damages is the difference between the market value of the mill property before and after the injury. As the assessment is to be made now of the damages to flow from permission to take the water in the future, the evidence should be confined to the market value, at the present time, of the plaintiffs' mill property with an undisturbed flow of water, and with the flow disturbed as proposed by the defendant. The difference between these sums represents the amount of damage to be sustained by the plaintiffs by the proposed diminution of their water-supply by the defendant. This precise question has not been hitherto passed upon by this court, but the measure of damages stated is

plainly right, conforms to our holdings on kindred questions and accords with the holdings in like cases in our sister States. In *Norfolk County Water Co.* v *Etheridge, supra,* it was held that "Where a dam causes permanent injury to another's land, the measure of damages is the difference in the market value of the land with and without the dam, to be computed as of the time immediately before the dam was built and immediately after it was finished and filled with water." See also, *Richmond, etc., R. Co.* v. *Humphreys,* 90 Va. 425, 18 S. E. 901; *Richmond, etc., R. Co.* v. *Chamblin,* 100 Va. 401, 41 S. E. 750; *Hunter* v. *C. & O. Ry. Co.,* 107 Va. 158, 59 S. E. 415, 17 L. R. A. (N. S.) 124; *Burger* v. *State Female Normal School,* 114 Va. 491, 77 S. E. 489; *Virginian Ry. Co.* v. *Hurt,* 112 Va. 622, 72 S. E. 110; *McHenry* v. *City of Parkersburg, supra.* In 8 Ruling Case Law, p. 481 it is said "the proper measure of damages for permanent injury to real property is the diminution in the market value of the property," and a large number of cases from other States is cited in support of the text. See also 13 Cyc. 150 and cases cited.

This objection to the measure of damages was not made in the trial court or in this court, but the point involved is fundamental. Whether or not the decree of the trial court should be reversed for the error mentioned need not be decided, as the decree has to be reversed on other grounds, but attention is called to it so that the error may not be repeated on any future trial.

There was no evidence before the jury as to the wealth of the defendant, or the value of its stock, but during the argument of the issues before the jury, counsel for the plaintiffs addressed the following remarks to the jury, which were duly excepted to as follows:

"Gentlemen of the jury: This most unusual case, a case without precedent in the annals of Virginia history, is one

in which you may consider not only past and future damages, but exemplary damages, as a deterrent to this and other corporations not to do likewise. In considering what would be a deterrent to a gigantic corporation of this kind, a corporation whose income is far greater than that of its creator, the State of Virginia, a corporation with $69,000,-000 of stock, and whose stock is selling on the market at around $145.00 a share, a great, rich corporation that disregards the law of God and man, and which, regardless of the decision of the Supreme Court of the Commonwealth of Virginia, the State that created this corporation, is going along and damaging these plaintiffs with impunity! I say, in order to make this corporation pay a penalty which would be of such magnitude as to deter it from continuing this damage, and damaging future parties, you must exact a penalty of this gigantic corporation which will make it stop and think!"

And thereupon defendant objected as follows:

"Mr. Kirkpatrick.—If your Honor please, I object to the argument of counsel. Is this a case where exemplary or punitive damages may be allowed?"

Whereupon the court ruled as follows:

"The Court.—Where persons persist in a wrong the jury may take that into consideration in estimating the damages," especially when the fact of the wrong has been judicially determined.

In a case in which exemplary or punitive damages are properly allowable, evidence of the wealth of the defendant may be introduced, and such evidence is a legitimate subject of proper comment, for what would be punishment to a poor defendant would be no punishment at all to one of wealth and affluence (*Singer Mfg. Co.* v. *Bryant* 105 Va. 403, 420, 54 S. E. 320), but it is never permissible for counsel to go outside of the record and testify as to matters not given in evidence, nor, in any case, to make use of language

calculated to inflame the minds of the jurors and induce a verdict not founded solely on the evidence adduced before them. So in this case, even if it were a proper case for punitive damages, the remarks of counsel are obnoxious to the rule we have stated.

But we do not think this case is a proper one for the award of exemplary, or punitive damages. It will be observed that the judgment of this court was not certified to the circuit court until February, 1916, and that the second action was brought August 24, 1916. The railroad company is a great public service corporation. Water for the conduct of its business is an absolute necessity. The location of the tank and pumping-station was selected with a view to the conveyance of a proper supply for the purpose. Whether or not an adequate supply could be obtained elsewhere and meet the necessities of the company does not appear from the record, but it is manifest from the quantity of water taken, and from other circumstances, that if a change was necessary the company should have had a reasonable time in which to ascertain where the new supply could be obtained, and to change its pumping-station and tank, upon making just compensation for the water taken. This was a matter that could not be settled at once, and it cannot be said the continued taking of water from Lockett's creek until a new supply could be obtained and made available, or until condemnation proceedings could be had, was a willful defiance of the judgment of the courts. Certainly, the continued taking of the water up to the time that it was agreed that the matter in controversy should be settled in the chancery suit cannot be said to evince malice or wantonness on the part of the railroad company, or an intention to defy the law of the land, or to oppress the Allens. The evidence in the case does not show that the railroad company was actuated by malice, wantonness or oppression, or that there was any fraud on

its part, or that it was guilty of any gross negligence or recklessness, or that its action in continuing to take the water, after the order of this court had been certified to the circuit court until arrangements were made to settle the controversy, evinced any intention on the part of the railroad company to disregard the rights of the Allens, or to defy the law of the land. Unless one or the other of these situations existed, the Allens had no right to recover punitive damages. 12 Am. & Eng. Enc. of Law (2nd edition), 21, and cases cited. We do not think, therefore, that the Allens were entitled to recover punitive damages in this case (1) because the law and the facts do not warrant it, and (2) because it was not within the issues submitted to the jury.

This court has more than once reprobated in no uncertain terms the practice of injecting into arguments of counsel statements calculated to inflame the minds of jurors, and tending to produce verdicts as a result of prejudice rather than a calm consideration of the evidence. Every litigant, natural or artificial, is entitled to a fair and impartial trial, and there should be excluded from the tribunal which is to try the case, whether judge or jury, every thing that has no tendency to aid such tribunal in doing impartial justice between the litigants. There can be no difference of opinion on this subject. But, while assenting to this statement of the law, it is argued that the error of addressing improper remarks to the jury was harmless error, as there was ample evidence to sustain the verdict, and it does not appear that the jury found any punitive damages. The harm consisted in depriving the defendant of a fair and impartial tribunal to weigh and consider the evidence lawfully before it touching the actual damages sustained. There was no exact measure of damages in the instant case. The actual damages sustained and to be sustained could not be measured by any exact standard. They were matters which

78

lay largely in the opinions of witnesses, and these opinions were based upon different data. There was a wide difference between the testimony on behalf of the plaintiffs and that on behalf of defendant. And even as to the plaintiffs' testimony based upon the value of horse-power, in estimating future damages, the value of such horse-power is dependent upon the extent that it can be and is utilized. Horse-power without use is valueless. To the extent that the plaintiffs could not, from any cause, obtain grain to grind, or did not obtain it, the horse-power would be valueless unless it could be sold. Upon these questions there was sharp conflict of testimony, and the testimony of one of the plaintiffs was not altogether consistent with his testimony on the former trial, nor was the value of such horse-power ascertained by any satisfactory evidence, and yet upon this issue the verdict was for the exact amount claimed by the plaintiffs. It cannot, therefore, be said that the error was harmless, even though the verdict awarded no punitive damages. On account of the improper remarks by counsel for the plaintiffs in addressing the jury, the verdict will be set aside.

. The other objections raised need not be considered, as the questions raised thereby are not likely to arise on another trial.

*Reversed.*

SIMS, J., dissenting:

I concur in the majority opinion in its positions on the following points, namely: As to its being immaterial before which branch of the court the motion to set aside the verdict and award a new trial was made, since the same judge presided over both; as to how the evidence must be regarded by us on the motion to set aside the verdict of the jury on the issue out of chancery; as to there being no

duty upon the appellees to minimize damages; as to the impropriety of counsel in any case going outside of the record and making use of language calculated to inflame the minds of the jurors and induce a verdict not founded solely on the evidence adduced before them.    But—

I cannot concur in the majority opinion in taking the following positions, namely: (1) that the permission of the trial court of the remarks of counsel in the case before us was reversible error; or (2) that this was not a case in which it was proper for the jury to take into consideration the allowance of exemplary damages; or (3) that the measure of damages for the future injury to appellees was the difference between the market' value of the mill property before and after the injury; or (4) that the verdict of the jury awarding the future damages it assessed was without evidence to support it; and hence I am forced to dissent from the conclusion reached by such opinion in its reversal of the case.    The reasons which constrain me to take a different view from the majority of the court upon the four subjects mentioned will be stated in their order below.

(1) I do not think that the remarks of counsel set out in the majority opinion constituted reversible error in the case because of the following considerations:

(a) Such remarks, going outside of the record, were improper and subject to objection in the trial court.    But when such objection was interposed, it should, as in the case of other objections to matters of procedure or the conduct of the trial, have stated the ground of the objection. In the instant case, as will be noted, the ground of objection stated before the trial court was not that the appeal to the jury was "inflammatory," or "unjust," or "deserving of stern rebuke" (the objection made before us on appeal), nor any objection to that effect.    The only objection made was that it was not a case where exemplary or puni-

tive damages might be allowed. The trial judge naturally passed and ruled only upon the objection made. The further objection aforesaid was not made at all, not even in the motion to set aside the verdict and grant a new trial, nor was it passed upon by the trial judge, but is urged before us for the first time.

This subject is governed by the same rule of procedure which is applicable to other errors of procedure which may be committed in the trial of a case. "Such a line of argument" may be the subject of review on appeal "if proper objection be made to it at the proper time and the trial court fails to take proper steps to correct its ill tendencies. * * *" *Southern Ry. Co.* v. *Simmons,* 105 Va. 651, 666-7, 55 S. E. 459, 464. But if the objection made in the appellate court was not made in the trial court, and the trial court was not asked to rule on or instruct the jury upon such objection, the objection cannot be considered on appeal. *State* v. *Clifford,* 58 W. Va. 681, 52 S. E. 864; *Landers* v. *Ohio River R. Co.,* 46 W. Va. 492, 33 S. E. 296. And the same principle upon which rests the rule that where a specific objection to the admission of evidence is properly overruled by the trial court, other objections cannot be thereafter assigned as error on appeal (*Richmond Ice Co.* v. *Crystal Ice Co.,* 103 Va. 465, 49 S. E. 650; *Warren* v. *Warren,* 93 Va. 73, 24 S. E. 913), applies to the objection in question in the cause before us. It seems to me, therefore, that for this reason such objection cannot be considered by us. Further:

(b) According to the salutary rule of this court, now firmly established, it must affirmatively appear from the record that an error has been prejudicial to an appellant, otherwise the error must be considered by this court as having been harmless and is not ground for reversal. *Standard Paint Co.* v. *Vietor & Co.,* 120 Va. 595, 91 S. E. 752.

On this subject, the trial judge and chancellor, in his opinion made a part of the record, says: "Allusion has been made to the fact that the jury may have included punitive or exemplary damages in their verdict. I think the size of their verdict makes it manifest that they did not do this, although I think that they might have considered doing this, as the court informed them that a persistent trespasser upon the rights of another, particularly after those rights have been judicially determined, does not stand upon the footing of an ordinary trespasser. I think it is apparent from the evidence that the jury put into that verdict nothing except what they thought was necessary to compensate the plaintiffs for the actual injuries which they have sustained or may sustain in their business and property both in the past and for the future, and speaking now as chancellor and not as a law judge, I say that they have not given them one dime more than I would have done after hearing the evidence, had I determined the matter without a jury."

The verdict of the jury was merely advisory of the chancellor. The decree, after all, is what must be looked to in order to ascertain whether exemplary damages or *excessive damages* have been awarded; and the chancellor has certified that the decree did not award any such damages but only proper compensatory damages.

Further, on the question of whether the damages assessed by the verdict of the jury and decreed by the chancellor were excessive: As I view the evidence, as hereinafter stated, there was ample evidence to support the verdict and decree for the amounts of damages allowed as purely compensatory damages.

Hence, it seems clear that not only does it not affirmatively appear that the decree complained of included exemplary or excessive damages, but the contrary appears from the record. Therefore, if there was error in the permission of the remarks of counsel, it was harmless error.

(2) As to the position aforesaid that this case was not one where the allowance of exemplary or punitive damages might have been considered by the jury:

Appellant does not. question that if the cause before us had been an action at law, exemplary or punitive damages might have been recovered under the rule laid down in 2 Blackstone's Com. 220, as follows: "Indeed, every continuance of a nuisance is held to be a fresh one, and therefore a fresh action will lie, and very exemplary damages will probably be given, if, after one verdict against him, the defendant has the hardihood to continue it."

And this is true of all repeated trespasses and repeated torts. 8 R. C. L., section 133, page 588. The existence of actual malice or ill will on the part of the defendant is not necessary to warrant the allowance of exemplary damages against him. The existence of "malice in law" is sufficient, and exemplary damages may, in the discretion of the jury, be assessed in all cases of trespasses and torts where the conduct of the defendant is "a wrongful act, done intentionally, without legal justification or excuse." Note to 16 L. R. A. (N. S.) 440. As said in 8 R. C. L., *supra:* "Willfully to commit a trespass upon the rights of an individual is of itself sufficient to permit the awarding of punitive damages, though committed on but one single occasion; and especially may such damages be allowed when the trespass is repeated. Thus, where a recovery has once been had for a nuisance, and it is continued, exemplary damages are allowed as a matter of course upon a second successful suit * * *"

Hence, I must say, with great deference, that I think the majority opinion in its discussion of the subject under consideration ignores the well settled rule above adverted to, that actual malice in fact need not exist in order to warrant a jury in considering the allowance of exemplary or punitive damages. If malice in law exists (which was true of

the instant case, as above pointed out, and as indeed follows from the statement in the majority opinion that the defendant "was no less a trespasser because it intended to exercise its right of eminent domain   *   *   *," since, that being so it was a repeated trespasser), it was sufficient to bring the case within the operation of the rule that the jury might have considered the allowance of such damages.

And appellant does not, in the able argument of learned counsel in the petition or brief, or orally before us, controvert the correctness of the above conclusion, except upon one ground, namely: It contends that the awarding of exemplary or punitive damages is not a function of a court of equity.   The case of *Karns* v. *Allen*, 135 Wis. 48, 115 N. W. 357, 15 Ann. Cas. 543, is the only authority cited and relied on in support of the position that such a court will not award such damages, but only compensatory damages. In that case the plaintiffs, by their bill, sought the aid of a court of equity, not only to abate a nuisance, but also to recover the damages sustained by reason thereof.   That case denied the recovery of exemplary damages in equity on the ground (to quote from the opinion therein) that, "* * * where one comes into a court of equity he waives his claim for punitive damages * * * the plaintiffs had their election to sue at law or in equity.   They elected to sue in equity, and having done so, they brought themselves within the rules of equitable actions and waived the right to recover exemplary damages."   The authorities referred to in that case, which sustain its said holding, place the distinction between the right of recovery of exemplary damages at law and in equity on the same ground, and the recovery of such damages is denied in a court of equity on the ground that the plaintiffs have themselves sought the aid of that court to recover damages.   It was not so, however, in the cause before us.   In the case before us, the appellees elected to sue at law and did sue at law for damages.   By their bill

in equity they prayed only for the equitable relief of the abatement of the nuisance caused by the conduct of the appellant. They did not pray that the court of equity should assess any damages ancillary to that relief or otherwise. As appears from the decree of December 4, 1916, hereinafter quoted from, the relief sought by appellees in equity was only that the court would "award the injunction as prayed for in the bill," and it was "upon the defendant's (appellant's) motion that the court enjoin and restrain the plaintiffs' (appellees') action at law now pending in this court to recover damages * * *" that the court below refused the injunction prayed for by the appellees and took jurisdiction on its chancery side "to do complete justice to the plaintiffs herein and to avoid a multiplicity of suits * * *" In the cause before us, therefore, the plaintiffs in the court below (the appellees here), were, on motion of the defendant there (the appellant here), denied the exercise of their election to sue at law for their damages and were forced against their will to have the same assessed in a court of equity. In such a case it would be inequitable to deny to the appellees the benefit of the rule aforesaid which would have been applicable in their action at law (and in the repeated actions they might have thereafter brought), and hence I think that the objection made by appellant that this is not a case in which exemplary or punitive damages might have been allowed by the jury was not well taken.

The majority opinion on the subject under consideration rests, essentially, upon its view that the case before us must be considered as if it were a proceeding to condemn the water rights in question. It assumes that procedure in the court below by which it took jurisdiction to award future as well as past damages to the appellees, was an *arrangement* made to settle the controversy between the parties in lieu of condemnation proceedings, and, in effect,

that such arrangement was accepted and assented to by the appellees. With the utmost deference, I must say that I can find nothing in the record to bear out such an assumption.

The record in the case shows that on December 4, 1916, the following order or decree was entered in the court below:

"This cause came on this day to be again heard on the papers formerly read, to-wit, bill and depositions in support thereof, the answer thereto, the affidavit of A. Bruner in support of said answer, and on the plaintiffs' motion to award the injunction as prayed for in the bill, and upon the defendant's motion that the court enjoin and restrain the plaintiff's action at law now pending in this court to recover damages of the defendant for the injuries caused the plaintiff by the diversion, by the defendant, of the water of Falling creek and its tributaries from July 3, 1912; and the court having heard the argument of counsel on October 10, 1916, when this matter was first presented to it and not then being advised of its judgment, did take time to consider thereof and adjourned the further hearing thereof until the first day of November, 1916, term, and upon the day last mentioned, the court doth adjudge, order and decree as follows:

"That the injunction prayed for by the plaintiffs be and the same is hereby refused, because the defendant is shown to be a common carrier, and the inconvenience to it in granting said injunction would far outweigh the benefit to the plaintiffs in awarding the same, also because since the trial of the common law cause in this court between the above parties, it is shown that the defendant has built a new line which diverted a large part of its traffic around the water tank in question, and it is not shown what damage, if any, is done to the plaintiffs under these conditions, and further, because this court, on its chancery side, hav-

79

ing complete jurisdiction of the parties and the subject matter, may do complete justice to the plaintiffs herein and avoid a multiplicity of suits, and, therefore, the court doth decide to assume such jurisdiction on its chancery side, and to the end that it may be further advised as to its judgment, doth order that a jury be empaneled at the bar of this court, which jury is directed to report unto this court for its consideration the findings of said jury upon the following issues, to-wit:

"First: What sum of money, if any, the plaintiffs should recover as damages for the diversion of the water by the defendant from Lockett's creek from the third day of July, 1912, to the date of the trial of this issue; and

"Second: What damages, if any, will the plaintiffs sustain in future by the continued diversion of water by the defendant from said stream.

"And the court doth further adjudge, order and decree that the plaintiffs be restrained from the further prosecution of their action for damages against the defendant on the common law side of this court, pending the proceedings above directed upon the chancery side of this court."

Thereafter, the decree complained of was entered on December 8, 1916, allowing the appellee the damages set forth in the majority opinion, and perpetually enjoined and restrained the appellees from suing the appellant at law for future damages in the premises.

It is true that counsel for appellant states, both in his brief and in oral argument, that the appellant intended to institute condemnation proceedings, and counsel for appellees did not deny that statement. But appellant did not, as a matter of fact, institute condemnation proceedings. Nor does it appear that the court below took jurisdiction to award damages past and future in lieu of condemnation proceedings, nor that appellees by counsel or otherwise assented to its taking such jurisdiction in lieu of condemna-

tion proceedings. On the contrary it appears from the order or decree of court above quoted that the court below took such jurisdiction in lieu of allowing repeated actions at law and in lieu of awarding the injunction prayed for by appellees.

(3) As to the "market value" measure of damages being applied as the measure of the future damages:

The position of the majority opinion on this point also rests upon the assumption aforesaid, that this practically is a case of a condemnation proceeding by appellant to take the water right aforesaid for public use, under the exercise by it of the power of eminent domain granted to it by legislative authority. But, as aforesaid, this is not such a case. As stated in the majority opinion itself: "The railway company was no less a trespasser because it intended to exercise its right of eminent domain than if it had entertained no such intention. *Norfolk & Ocean View Ry. Co.* v. *Turnpike Co.*, 111 Va. 131 [68 S. E. 346, Ann. Cas. 1912 A, 239]." The same measure of damages should therefore be applied to the injury caused by such trespasser as is applicable to the same character of injury caused by any other trespasser according to the well settled rules of law on the subject.

Now, in the instant case, the damages to which the plaintiffs were entitled were such as they were entitled to recover by succeeding actions for temporary injury or temporary damages. They were forced into a court of equity on the subject of damages by the defendant, and that court exercised its jurisdiction to award to the plaintiffs all the damages which they were entitled to recover at law, so as to afford them full relief in allowance of damages, having enjoined the prosecution by plaintiffs of their pending and the institution by them of any succeeding action at law to recover the damages in question. In such case it seems plain that the measure of damages in the case before us must be the same as they would have been in the pending

and in succeeding actions at law, which, but for such injunction, the plaintiffs would or could have prosecuted. For the measure of damages in such cases, we must look to the common law rule on the subject.

Now it is the settled rule of the common law that in ac-. tions for temporary injury or temporary damages, such as we have under consideration, the measure of damages is the loss sustained by the plaintiff in deprivation of the use or usable value of the property, and the "market value" rule of measure of damages is not applicable. 8 R. C. L., section 51, 53, 67, 68; 2 Farnham on Waters, section 510; *Norfolk County Water Co.* v. *Etheridge,* 120 Va. 379, at page 382, 91 S. E. 133; *McHenry* v. *City of Parkersburg,* 66 W. Va. 533, 535, 66 S. E. 750, 29 L. R. A. (N. S.) 860. Loss of net profits is a proper element for consideration in applying such measure of damages. 8 R. C. L., section 67 68; 2 Farnham on Waters, section 510. Lost profits or lost gains are as recoverable as any other loss, if proved with reasonable certainty. *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875. The result of the injury complained of in the instant case was to deprive the plaintiffs in error of the use of water to drive their mill to the extent of a certain amount of horse-power.

Therefore, the market value of such horse-power, or the expense of replacing it, was proper evidence for consideration in applying the measure of damages aforesaid. *Waston* v. *Boston Railroad,* 190 Mass. 298, 76 N. E. 1050, 4 L. R. A. (N. S.) 569, 112 Am. St. Rep. 330, 5 Ann. Cas. 825. "The law adopts that mode of estimating damages which is most definite and certain" in the particular case. *Griffin* v. *Colon,* 16 N. Y. 489, 69 Am. Dec. 718. And as to future damages the value of the horse-power lost was more definite and certain than an estimate of future loss of profits.

Of the cases cited in the majority opinion on the point under consideration, those of *Hunter* v. *C. & O. Ry. Co.;*

*Burger* v. *State Female Normal School;* and *Richmond, etc., R. Co.* v. *Chamblin,* were cases involving condemnation proceedings actually instituted; that of *Richmond, etc., R. Co.* v. *Humphreys* was an action for permanent damages; that of *Norfolk County Water Co.* v. *Etheridge,* in so far as it applied the "market value" measure of damages, was an action for permanent damages; that of *Virginia R. Co.* v. *Hurt* did not involve or pass on the question under consideration; and that of *McHenry* v. *City of Parkersburg is directly against* the holding of the majority opinion now being considered, in that it expressly holds, at page 535 of 66 W. Va., at page 751 of 66 S. E. (29 L. R. A. [N. S.] 860) : "Injury to real estate differs in nature and degree.  *  *  * The injured party is limited to the recovery of temporary damages, when the injury is intermittent and occasional *  *  *," as is true in the instant case, as pointed out in the majority opinion; and in that case the court below was reversed for applying the "market value" measure of damages to a case of intermittent or occasional injury such as is the nature of the injury in the case before us.

As to the text-writers cited in the majority opinion, and other text-writers on this subject, they sanction the application of the "market value" measure of damages to cases of permanent injury to real estate only, or where the damages are assessed in a condemnation proceeding, or in cases in which the plaintiff's right of action does not exist at common law, but is dependent upon a constitutional guarantee against his property being taken for public use without "just compensation;" in which latter cases the measure of damages is governed by the constitutional and statutory provisions of the particular jurisdiction on the subject.   See 2 Lewis on Em. Dom., sections 687, 689, 696, 752, 890, 891; *Tidewater R. Co.* v. *Shartzer,* 107 Va. 562, 567-8, 59 S. E. 407, 17 L. R. A. (N. S.) 1053.

(4)  As to the verdict of the jury for future damages being without evidence to support it:

As this is a minority opinion, it would serve no useful purpose for it to enter upon any discussion of this pure question of fact, since no difference with the majority opinion on any legal question is involved therein. It is deemed sufficient to say here that, as I view the record, it contains ample evidence to support the verdict and decree for the future damages allowed, the weight and credibility of which was for the consideration of the jury so far as their verdict was concerned. *Barbour* v. *Melendy & Russell,* cited in the majority opinion; and see also, *Carter* v. *Campbell,* Gilmer (21· Va.) 159; *Almond* v. *Wilson,* 75 Va. 613, 626; *Fishburne* v. *Ferguson's Heirs,* 84 Va. 87, 102, 4 S. E. 575; *Muse* v. *Stern,* 82 Va. 33, 35, 3 Am. St. Rep. 77; *Mears* v. *Dexter,* 86 Va. 828, 832-3, 11 S. E. 538.

For the reasons stated above, I am constrained to dissent from the majority opinion.