# Wytheville.

Norfolk and Ocean View Railway Co. v. Consolidated
Turnpike Co. and Others.

June 9, 1910.

Absent, Harrison, J.

1. Estoppel—*Former Inconsistent Position—Eminent Domain.*—A
party who claims under the plaintiff in a condemnation proceed-
ing, recognizes its validity, and procures an injunction to pre-
vent a deed of trust creditor from subjecting the land sought
to be condemned to the payment of the debt secured until the
right to condemn has been decided in the proceedings taken
for that purpose, is thereafter estopped to deny the validity of
the condemnation proceedings, or the right of the plaintiff
therein to institute it. A litigant will not be allowed in a sub-
sequent judicial proceeding to take a position in conflict with
a position taken by him in a former judicial proceeding, which
latter position is to the prejudice of the adverse party, where
the parties are the same, and the same questions are involved.

2. Appearance—*Special—General Appearance—What Constitutes.*—An
appearance for any other purpose than questioning the juris-
diction of the court because there was no service of process, or
the process was defective, or the service thereof was defective,
or the action was commenced in the wrong county, or the like,
is general and not special, although accompanied by the claim
that the appearance is only special. A motion to vacate pro-
ceedings in a cause, or to dismiss or discontinue it, because the
plaintiff's pleading does not state a cause of action, is equiva-
lent or analagous to a demurrer, and amounts to a general
appearance.

3. Eminent Domain—*Failuse to Pay Damages—Vacation Ipso F'acto
of Proceedings Under 1105-f of Code—Estoppel.*—A party who
alleges the pendency of a condemnation proceeding long after
the expiration of three months from the filing of the report of

commissioners fixing the damages, and after failure to pay such damages to the party entitled or into court, and who obtains an injunction upon the ground of its pendency, restraining a deed of trust creditor from subjecting the property sought to be condemned to the satisfaction of the debts secured by the deed of trust, is estopped from claiming that the condemnation proceeding was *ipso facto* vacated and dismissed because the damages reported by the commissioners were not paid to the party entitled thereto, or into court, within three months after the report of the commissioners was filed, as was provided by section 1105-f, clause 27, of the Code as it was prior to March 15, 1906.

4. Eminent Domain—*Just Compensation—Improvements Lawfully Made.*—Where a corporation clothed with the power of eminent domain, lawfully enters into the possession of land for its purposes, and places improvements thereon, and afterwards institutes condemnation proceedings to cure a defective title, or to extinguish the lien of a deed of trust, it is not proper, in ascertaining a "just compensation," for such land, to take into consideration the value of such improvements.

5. Eminent Domain—*Damages—Personal Judgment.*—Whether the party seeking to condemn land is in or out of possession, the statutes of this State confer no authority upon the court to render a personal judgment against the condemning party for the amount of damages ascertained by the commissioners.

6. Statutes—*Construction—Application to Pending Cases.*—Although the words of a statute are broad enough, in their literal extent, to comprehend existing cases, they must be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein.

7. Appeal and Error—*Objections Not Made in Trial Court.*—This court will not consider objections made to the report of commissioners in condemnation proceedings which were not made in the lower court.

Error to a judgment of the Circuit Court of Norfolk county in a condemnation proceeding. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Groner & Taylor* and *Munford, Hunton, Williams & Anderson,* for the plaintiff in error.

*N. T. Green* and *C. H. Burr*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a condemnation proceeding instituted in the Circuit Court of Norfolk county by the receivers of the Circuit Court of the United States for the Eastern District of Virginia in the cause of *Fink* v. *Bay Shore Terminal Company and others*. Before a consummation. of the proceedings for condemnation, the property sought to be condemned, together with other property, was sold under a decree in the cause in which the receivers were appointed, the sale confirmed, and the purchaser, the Norfolk and Ocean View Railway Company, the plaintiff in error, received a conveyance of the property purchased, "with the benefit of and subject to all suits or proceedings which have been or may be instituted by the said receivers."

At the time of the institution of the proceedings to condemn, the predecessor in title of the plaintiff in error was in possession of the property sought to be condemned, under a conveyance from the Consolidated Turnpike Company, which purported to convey, with covenants of general warranty, the land sought to be condemned, but which at that time was subject to a lien created by a deed of trust properly recorded.

When the report of the commissioners appointed in this proceeding to ascertain the compensation and damages for the property to be condemned was filed, it was excepted to by appellee, Arthur W. Depue, one of the holders of the bonds secured by the said deed of trust. Before any action by the court upon the said report and the exceptions thereto,. the grantor company in the deed of trust having defaulted in the payment of interest on the bonds secured by it,. a judgment was rendered against that company, and a bill filed to subject the trust property to the payment of the debts secured upon it. Thereupon the appellant filed a pleading in

the Circuit Court of the United States in the cause ·in which the property had been sold, for the purpose, among others, of enjoining and prohibiting Walter H. Taylor, the trustee in the said deed of trust, and Depue, one of the beneficiaries therein, from enforcing the same against the property sought to be condemned until there had been a decision of the State court in this condemnation proceeding. That court granted the relief, and the Circuit Court of Appeals of the United States, upon appeal, affirmed the lower court.

After Taylor, trustee, and Depue, appellees, had been enjoined from enforcing the lien of the said deed of trust until there had been a decision of the State court in the condemnation proceeding, Depue abandoned certain of his exceptions to the report of the commissioners of condemnation, in which abandonment Taylor, trustee, united, and they moved the court to confirm said report in so far as it ascertained compensation, etc., for the land taken, including the improvements placed thereon by the appellant or its predecessor in title. At the same time the appellant which had never been made a party to the condemnation proceeding, appeared specially, as it claimed, and moved the court to dismiss and vacate the proceedings had in the cause, and to discontinue it. The court overruled the appellant's motion, held that its appearance was general, entered an order sustaining the motion of the appellees allowing compensation for the land taken including the value of the improvements placed thereon by the appellant or its predecessor in title, directed that the appellant within three months deposit that sum with interest in some National bank of the city of Norfolk to the credit of the court and subject to its further order. To that order this writ of error was awarded.

The first error assigned is to the action of the trial court in appointing commissioners in the cause, based upon the following grounds:

1st. The petition was filed and the motion made by receivers of the Circuit Court of the United States, who had no authority under the statute law of Virginia to institute such proceedings.

2nd. The property sought to be acquired by condemnation was the property of a public service corporation—the Consolidated Turnpike Company—and such property could not be taken by another company unless after hearing all parties interested, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto; and that there was no such hearing or permission.

3rd. The petition did not allege that the land sought to be condemned was necessary for the corporation which the receivers were operating, nor did it allege that they were unable to agree with the owners.

4th. There was no plat or survey of the property sought to be acquired filed with the petition, as required by statute.

5th. The notice served and published did not describe the property referred to in the petition of the receivers.

We think that the appellant is estopped from relying upon any of the grounds named for a reversal of the order complained of. It not only claims under the proceedings in which the receivers who instituted this proceeding were authorized to institute it, but after its purchase in that case, in order to prevent the appellees from subjecting the deed of trust property in the State court, as they clearly had the right to do but for the condemnation proceedings, it relied upon those proceedings and by means thereof procured the said injunction from the Federal court. To permit the appellant afterwards, when the appellees were asserting their rights in the condemnation case, to deny that the receivers who brought that proceeding had authority to institute it, or that their petition instituting it was sufficient, would be in violation of the well settled rule of law, that a litigant will not be al-

lowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, which latter position is to the prejudice of the adverse party, where the parties are the same and the same questions are involved. *Tatum* v. *Ballard*, 94 Va. 370, 26 S. E. 871; *C. & O. Ry. Co.* v *Rison*, 99 Va. 18, 32, 37 S. E. 320, and authorities cited; 16 Cyc. 799-800.

After the injunction was granted restraining Taylor, trustee, and Depue from prosecuting their suit to subject the trust property to the payment of the debt secured by the trust deed, Depue notified the plaintiff in error that he would move for a confirmation of the commissioners' report in the condemnation proceeding, or so much thereof as fixed the compensation, etc., for the property at $57,200. In response to this notice the plaintiff in error appeared and moved the court to vacate and dismiss the condemnation proceeding. This motion was overruled by the court, and its action is the second error assigned.

This assignment of error is based upon the same grounds as is the first assignment of error, and for the same reasons the action of the trial court must be sustained.

The third error assigned is to the action of the court in holding that the appearance of the plaintiff in error was general and not special.

An appearance for any other purpose than questioning the jurisdiction of the court—because there was no service of process, or the process was defective, or the service thereof was defective, or the action was commenced in the wrong county, or the like—is general and not special, although accompanied by the claim that the appearance is only special. 3 Cyc. 502; 2 Am. & Eng. Ency. Pl. & Pr., 620, 625-6.

When the plaintiff in error appeared and moved the court to vacate the proceedings had in the cause and to dismiss it, it did so, upon grounds which went to the sufficiency of the petition of the receivers. A motion to vacate proceedings in

a cause, or to dismiss or discontinue it, because the plaintiff's pleading does not state a cause of action, is equivalent or analogous to a demurrer and amounts to a general appearance. See 3 Cyc. 506-7; 2 Am. & Eng. Ency. Pl. & Pr. 635-6; *Albert* v. *Clarendon, &c., Co.*, 53 N. J. Eq. 623, 23 Atl. 8.

We are of opinion that the plaintiff's appearance was general and that the trial court properly so decided.

One of the grounds upon which the plaintiff in error sought to have the cause dismissed was that the report of the commissioners assessing the compensation, etc., for the property had been filed more than three months without the amount of damages ascertained thereby having been paid to the party entitled or into court.

By sub-sec. 27 of sec. 1105-f of Va. Code, 1904, it is provided, that "If in any such proceeding (condemnation) the amount or amounts ascertained by the commissioners as aforesaid be not paid to the party entitled thereto, or into court, within three months from the date of the filing of the report of the commissioners, the proceedings shall *ipso facto* be vacated and dismissed."

More than three months, indeed nearly three years, had elapsed between the filing of the report of the commissioners and the motion of the plaintiff in error to vacate and dismiss, and the amount ascertained by the report had not been paid to the party entitled or into court. Sub-section 27 of section 1105-f, Va. Code, 1904, had been amended by an act approved March 15, 1906, Acts 1906, p. 452, 455, and was in force when said report was filed, though not in effect when this proceeding was instituted or the commissioners appointed. The act as amended is as follows: "If in any such proceeding the amount or amounts ascertained by the commissioners as aforesaid be not paid either to the party entitled thereto or into court, within three months from the date of the filing of the report of the commissioners, the proceedings shall, on motion of the defendant, be vacated and dismissed as to him, but not otherwise."

Whether or not the amendment was retroactive and applied to condemnation proceedings commenced before the amendment was made, it is unnecessary to decide in determining this question, for it is clear, we think, that the plaintiff in error is estopped from claiming that the condemnation proceeding was *ipso facto* vacated and dismissed because the amount ascertained by the commissioners' report was not paid to the party entitled thereto or into court within three months after the report of the commissioners was filed, after alleging the pendency of the condemnation proceeding long after the expiration of the said three months and obtaining an injunction upon the ground of its pendency, restraining the defendants in error from subjecting the property sought to be condemned to the satisfaction of the debts secured by the deed of trust. The reasons why the plaintiff in error is estopped from denying the pendency of the proceeding are the same as those given in disposing of the first assignment of error and need not be repeated.

By the order appointing the commissioners, they were directed, among other things, to ascertain and report the present value of the land to be taken with the present improvements thereon, and also its present value without such improvements. Their report on these questions for the property to be taken is as follows:

"If valued as of the date of this report, without improvments, $6,200.00 will be a just compensation.

| | | |
|---|---:|---:|
| For the land with improvements | $ 7,200 | 00 |
| For the steel rails | 15,000 | 00 |
| For the railroad ties | 1,250 | 00 |
| For the overhead construction | 2,500 | 00 |
| For the machinery in the power house | 25,000 | 00 |
| For the buildings on tract No. 2 | 5,000 | 00 |
| Making a total of | $57,200 | 00 |

will be a just compensation."

The defendants in error moved the court to confirm that portion of the report which ascertained that $57,200 would be a just compensation for the land to be taken, and the court sustained that motion and entered an order requiring the plaintiff in error to deposit within three months the said sum of $57,200, with interest from the date of the order, in some National bank in the city of Norfolk to the credit of the court subject to its future order.

To this action of the court there are two assignments of error: First, that the court erred in confirming that portion of the report which took into consideration the value of the improvements placed upon the property by the plaintiff in error or its predecessor in title, instead of that portion of the report which ascertained the value of the property to be taken without considering the value of the improvements; and, second, in requiring the sum ascertained as just compensation to be deposited in bank to the credit of the court.

It is insisted by the appellees that the question involved in the first of these grounds of error has been settled in their favor by the cases of *Newport News, &c. Co.* v. *Lake,* 105 Va. 311, 54 S. E. 328, and *Flanary* v. *Kane,* 101 Va. 547, 46 S. E. 312, 681.

Neither of those cases present precisely the same question involved in this case. In *Newport News, &c. Co.* v. *Lake,* the premises had been sold under the deed of trust and the purchaser, who was the defendant in the condemnation proceedings, had recovered the premises in an action of ejectment after the improvements had been placed upon the premises by the railway company under authority of the grantor in the deed of trust. It was held that the purchaser having recovered in the action of ejectment the premises in fee upon which the railway was laid in its then condition, and all the improvements upon it as a part thereof, the improvements as well as the land being his property his compensation was not limited to the value of the land as it was before the improve-

ments were placed upon it. The other case relied on was not a condemnation proceeding, but a suit to subject the premises upon which the improvements had been placed to the payment of judgments docketed at the time the railway company purchased the land and placed its improvements thereon. But while it was a case in equity, it was held that the principle invoked, that he who asks equity must do equity, did not apply, since the plaintiffs in that case, in coming into equity to enforce their liens, were not asserting an equitable right or seeking equitable relief, and could not be put upon terms. They were asserting legal rights, and under the well settled rules of the common law it was held that they were entitled to subject to the payment of their liens the land with the improvements thereon of which they were a part.

Lewis, in his work on Eminent Domain, vol. 2, sec. 507, (2nd ed.), in discussing this question, says: "The question now to be considered is whether in proceedings (condemnation) for this purpose the owner of the land is entitled to the value of the improvements which have been put upon it by the condemning party. If the entry has been made by the consent of the owner, express or implied, it is clear that the owner should not have the value of what has been put upon the land. He has let the condemning party in for the very purpose of making these improvements and with the expectation that the right permanently to enjoy the land with the improvements would be acquired by agreement or otherwise. The cases all concur upon this point without much discussion of principles. . . . Such consent may be given by the life tenant so as to bind the reversioner, or the mortgagor in possession so as to bind the mortgagee."

In discussing the question, where the entry has been without the consent of the owner, he asserts that the same rule as to compensation obtains in most jurisdictions, and where it is held otherwise the decisions are placed upon the strict rules of the common law, that a structure placed upon land by a

trespasser becomes a part of the realty and cannot be removed..
But he says, "the proceeding to ascertain a just compensation·
to be paid for property taken for public use is not a common
law proceeding.   The principles to be applied are broad and·
liberal, and such as are just to both parties.   It is a just com-
pensation, no more and no less, which the Constitution re-
quires to be paid.   In determining what is just, the courts are·
not hampered by any hard and fast rules of the common law.
As we have already shown, just compensation to the owner is.
an indemnity for the loss he sustains, irrespective of the gen-
eral advantages and disadvantages which affect the commun-
ity at large.   Indemnity in the case supposed does not include·
the value of works prematurely placed upon the property.
The owner has not lost the value of such works, but if their·
value is given to him, it is so much in excess of his loss, which·
is something never contemplated by the Constitution."

So far as this statement applies in condemnation cases to·
entries made with the consent of the owner, it is sustained by·
the overwhelming weight of authority.   See cases cited in·
notes to section 507 of Lewis, in notes to *Village of St. Johns-
ville* v. *Smith*, 6 Am. & Eng. Ann. Cases 379, 382-4; 184·
N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922.

In quoting what Lewis said we do not wish to be understood·
as approving his statement so far as it applies to entries upon·
land without authority express or implied.   As was said by
the Court of Appeals of New York in the case last cited above,.
where the entry was without authority, "so far as actual intent
is concerned, a personal trespasser who annexes a structure to·
another's freehold does not mean that it shall become the prop-
erty of the land owner any more than does a trespassing rail--
way company or municipality which does the same thing in·
contemplation of acquiring the land at some future time by·
the exercise of the right of eminent domain.   The law affixes.
consequences to the act, and not to the intent.   It says to those
who invoke the power of eminent domain, as well as to all:

others. 'If you invade land without legal right and place struc-
tures thereon, those structures belong to the land owner. There
is no more hardship in applying the rule to the one class of
trespassers than to the other. In both cases the application
tends to prevent a wrong. Its operation in this State has
been and will doubtless continue to be most salutary in con-
straining those municipal and other corporations which the
State has authorized to exercise the power of eminent domain
not to assume the possession of lands in advance of any right
so to do, and thus practically nullify, during the period of
wrongful possession that provision of the Constitution which
guarantees the citizen against being deprived of his property
for public use without just compensation."

Where the possession of the party seeking to condemn is
lawful, Lewis's statement, that in ascertaining just compensa-
tion the improvements placed upon the premises by it are not
to be included, is not only sustained by the great weight of au-
thority, but by the better reason. In a controversy between
the land owner and the condemning party, the former cannot
in justice claim the value of the land in its improved condi-
tion when the improvements were made with his consent.
Neither can a mortgage or deed of trust creditor. In grant-
ing permission to the condemning party to enter upon the
premises and place his improvements upon them, the land
owner has not prejudiced the mortgagee or trust creditor. It
is not pretended that such act has lessened the security, but it
is admitted that it has increased the value, and the claim of
the deed of trust creditor is that he is entitled to have the
benefit of this increase, not because in justice and equity he is
entitled to it, but because under the strict rules of the common
law all structures placed upon the property subject to his lien
enure to his benefit.

We are of opinion that where a corporation, clothed with
the power of eminent domain, lawfully enters into the posses-
sion of land for its purposes, and places improvements there-

on, and afterwards institutes condemnation proceedings to cure a defective title, or to extinguish the lien of a deed of trust, it is not proper in ascertaining "just compensation" for such land to take into consideration the value of such improvements.

The commissioners in their report ascertained the value of the land, as of the date of their report, without considering the improvements, at $6,200. This sum we think should have been fixed as the just compensation for the land taken, and that the trial court erred in not so holding.

The other ground upon which this assignment of error is based is the action of the court in requiring the plaintiff in error within three months to pay the sum ascertained as just compensation into some National bank in the city of Norfolk.

The Code, sec. 1105-f, sub-sections 9 to 13, provides how payment is to be made for land taken in condemnation proceedings. If the condemning company is not in possession when the report ascertaining a just compensation is confirmed, it can only acquire title to or the right of possession of the land so condemned by paying such sum into the court or to the party entitled. If such company is in posession of the land when the report of the commissioners is confirmed, as it may be where there has been a prior report which was not confirmed, and the confirmed report increases the compensation over that ascertained by the former report, the condemning company has thereafter no right to the possession until full payment has been made into court, or to the party entitled.

Mr. Lewis, in his work on Eminent Domain, in discussing the character of the judgment to be entered in condemnation cases, says: "If the statute is so far silent upon the subject as to leave the matter open for judicial construction, then the proper judgment to be entered will depend upon the following considerations: If possession has already been taken of the property, either by consent or otherwise, or if the property has

already been taken by virtue of an instrument of appropriation, as it may be in some States, before the compensation is paid, then a personal judgment with all its incidents may properly be entered."

Our statute does not expressly provide for such a case as we are now considering. In neither of the classes of cases provided for, whether the condemning party is in or out of possession, is there any authority conferred upon the court to enter a personal judgment. The reason for this may be in the fact that in the absence of statutory provisions on the subject, it is generally held that the effect of condemnation proceedings is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation of the report fixing such price the purpose of taking such property may be abandoned without incurring any liability to pay the damages awarded. See Lewis, sec. 656, and cases cited. Whatever be the reason of our law-making power for not authorizing a personal judgment in the class of cases provided for, we find no authority in the statute for entering a personal judgment in this case, and to do so would seem to be contrary to the principle upon which our statute was framed. Whatever be the effect of the amendment of March 15, 1906, heretofore quoted, as to the right of a party to abandon or discontinue condemnation proceedings instituted by it, it cannot affect this case, for it is well settled, "that although the words of a statute are broad enough in their literal extent to comprehend existing cases, they must be construed as applicable only to cases that may thereafter arise unless a contrary intention is unequivocally expressed therein." *Campbell, &c.* v. *Nonpareil, &c.*, 75 Va. 291, 298; *Price, &c.* v. *Harrison*, 31 Gratt. 114. There is nothing in that amendment which shows that it was intended to have any retroactive effect.

As to the remaining assignment of error, that the report of the commissioners is not in accord with the order and direc-

tion of the court in appointing them, it is sufficient to say that no such objection was made to the report in the lower court.

We are of opinion to reverse the judgment or order complained of, and to enter such judgment as the trial court ought to have entered.

*Reversed.*