# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **LYNDA KEEN BUTLER**, | ) | Lauderdale County |
|  | ) | Equity No. 7345 |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9702-CH-00038 |
|  | ) |  |
| **ARDEN J. BUTLER, JR.**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

**FILED**

**September 18, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Lauderdale County at Ripley.
**Honorable Dewey C. Whitenton, Chancellor**

**James S. Haywood, Jr.**, Brownsville, Tennessee
Attorney for Defendant/Appellant.


**Herman L. Reviere**, Ripley, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Defendant Arden J. Butler, Jr. (Husband), appeals the trial court's order which modified his alimony obligation to his former wife, Plaintiff/Appellee Lynda Keen Butler (Wife). We affirm the trial court's modification of the alimony award, but we modify the amount of the award.

This is the second alimony modification proceeding between these parties. The parties were divorced in April 1990 after almost thirty-five years of marriage. Pursuant to the terms of the parties' property settlement agreement, the final divorce decree ordered the Husband to pay alimony to the Wife in the amount of $2,500 per month. The Husband was responsible for making alimony payments to the Wife until one of the following events occurred: (1) the Husband reached the age of sixty-five years; (2) the Husband died; or (3) the Wife remarried.

In March 1994, the Husband filed a petition to modify the alimony provisions of the final divorce decree. As grounds for the modification, the Husband alleged that he was very ill and that his medical condition had adversely affected his earning ability. After conducting a hearing, the trial court entered an order in October 1994 which reduced the Husband's monthly alimony obligation to $1,250.

The current modification proceeding began in April 1996, when the Wife filed a petition to increase the Husband's alimony payments and to extend the term of the payments. In support of her petition, the Wife alleged that the Husband's financial status had substantially improved since the date of the last modification proceeding.

At the subsequent hearing on the Wife's modification petition, held in September 1996, the evidence concerning the parties' respective financial circumstances was largely undisputed. Since the last modification proceeding, the Husband had accepted full-time employment as a physician with the West Tennessee High Security Facility and Cold Creek Correctional Facility. The Husband's annual salary was $125,000, which was more than he earned when he was in private practice prior to his illness. In contrast, after the trial court's 1994 reduction of the alimony award, the Wife applied for and began receiving social security benefits each month. The Wife testified that, by applying for social security benefits before reaching the age of sixty-five, she knew she was

reducing her benefits. She explained that, despite this knowledge, she applied for the benefits after her alimony was cut in half because she needed the money. At the time of the 1996 modification hearing, the Wife was receiving approximately $480 per month in benefits. The Wife also was withdrawing money from an IRA on a monthly basis. The IRA was funded with proceeds from the property settlement the Wife received in the 1990 divorce. The Wife's monthly expenses had risen somewhat since the 1994 modification proceeding, from approximately $1740 to $1815.

The trial court entered an order on September 9, 1996, in which the court ordered the Husband to pay alimony to the Wife in the amount of $1,250 for the month of September 1996. The trial court ordered that, thereafter,

> Said alimony shall continue in the amount of $1,250.00, less the $500.00 per month [the Wife] receives from the retirement (IRA) plan. Therefore, [the Husband] shall actually be required to pay a net of $750.00. Said payment to begin in October, 1996 and continue until the death of [the Husband], remarriage of [the Wife], or modification by the Court.

Unlike its previous alimony awards, the trial court's modified award did not permit the Husband to discontinue making alimony payments to the Wife when the Husband reached sixty-five years of age. Although the trial court extended the term of the Husband's alimony obligation, the trial court's modification further reduced the monthly alimony payments from $1,250 to $750.

On appeal, the Husband contends that the trial court erred in modifying the alimony award because (1) the award was alimony *in solido* and, thus, was not subject to modification;[1] (2) the Wife failed to demonstrate a change of circumstances which would justify modifying the alimony award; and (3) the Wife failed to demonstrate that she had made a good-faith effort to rehabilitate herself. The Wife urges this court to affirm the trial court's extension of the alimony award, but contends that the court did not award the Wife an adequate amount. The Wife also contends that the trial court erred in denying her request for an award of attorney's fees.

We first conclude that the doctrine of the law of the case precludes the Husband from

---

[1] *See Self v. Self*, 861 S.W.2d 360 (Tenn. 1993).

contending that the alimony award at issue was not modifiable. Under the law of the case doctrine, "a decision on an issue of law made at one stage of the case becomes a binding precedent to be followed in successive stages of the same litigation." *Jones v. Jones*, 784 S.W.2d 349, 351 n.1 (Tenn. App. 1989) (quoting 1B James Wm. Moore et al., *Moore's Federal Practice* ¶ .404[1]). Thus, a ruling of the trial court which is not objected to or appealed from becomes binding on the appellate court as the "law of the case." *Id.* at 351 n.1 (citing 5 C.J.S. *Appeal & Error* § 1464(1) (1958)). This doctrine "protects litigants from the burdens of repeatedly rearguing issues that have been decided." *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. App. 1996).

The doctrine of the law of the case is similar to the doctrine of *res judicata* in that both "are founded on a public policy against reopening that which previously has been decided;" however, there are differences between the two doctrines. *Johnson v. Lawrence*, 1990 WL 20123, at *3 (Tenn. App. Mar. 7, 1990), *aff'd*, 1991 WL 147362 (Tenn. Aug. 5, 1991). Unlike the doctrine of *res judicata*, the doctrine of the law of the case is not a limitation on a court's power. Instead, "it is a common sense recognition that issues ordinarily need not be revisited once they have been litigated and decided." *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d at 90. For this reason, the doctrine has been described as "a discretionary rule of practice that promotes judicial economy and consistency." *Id.* Moreover, unlike the doctrine of *res judicata*, the law of the case doctrine "is confined to matters of law and is ordinarily concerned with subsequent proceedings in the same case." *Johnson v. Lawrence*, 1990 WL 20123, at *3. As one authority has explained,

> The law of the case, *res judicata*, and *stare decisis* belong to the same family in that they have in view the termination of controverted questions of fact and law. The law of the case, however, is distinguished from *res judicata*, in that the law of the case does not have the finality of the doctrine of *res judicata*, and applies only to the one case, whereas *res judicata* forecloses parties or privies in one case by what has been done in another case, . . . .

*Clements v. Pearson*, 352 S.W.2d 236, 237 (Tenn. 1961) (quoting 21 C.J.S. *Courts* § 195).

This court previously has applied the law of the case doctrine to preclude a spouse from relitigating the modifiability of the provisions of a final divorce decree. In *Jones v. Jones*, 784 S.W.2d 349 (Tenn. App. 1989), the court also was faced with successive petitions to modify the

alimony provisions of the parties' final divorce decree. In that case, the final divorce decree required the husband to pay alimony and to maintain three life insurance policies for the benefit of the wife. *Jones*, 784 S.W.2d at 351. In April 1986, the husband petitioned the court to reduce his alimony obligation and to relieve him of the obligation to maintain one of the life insurance policies. *Id.* at 350. In denying the husband's petition, the trial court ruled that the life insurance benefits awarded to the Wife in the final divorce decree represented a division of marital property and, thus, were not subject to modification. *Id.* In November 1987, the husband again petitioned the court to reduce his alimony obligation. This time, the issue of the life insurance policies arose when the wife filed a counter-petition for contempt based upon the husband's failure to maintain the policies for her benefit. *Id.* The trial court again refused to modify the life insurance benefits awarded to the wife in the final divorce decree, and the husband appealed. On appeal, this court held that the husband could not relitigate the issue of whether the life insurance benefits were modifiable. The court reasoned:

> It is not necessary for this Court to determine whether the language in the original divorce decree was sufficient to establish that the life insurance was a division of marital property and therefore not modifiable by the court in 1986. Even if the Husband could convince this Court that the language in the decree was ambiguous in that regard, the trial court's . . . 1986 order clarified that point. Because the 1986 order was not appealed from . . . , the holding of the trial court that the insurance benefits were not modifiable is "the law of the case."

*Jones*, 784 S.W.2d at 351.

Based on the law of the case doctrine, we similarly decline to revisit the issue of the modifiability of the alimony provision in this case. In the Husband's 1994 modification proceeding, the trial court determined that the alimony award to the Wife was modifiable and, consequently, reduced the Husband's alimony obligation by half. Because the trial court's 1994 order was not appealed, the trial court's holding that the alimony award was modifiable is now "the law of the case." *Jones*, 784 S.W.2d at 351. Accordingly, we hold that the Husband was precluded from relitigating this issue in the Wife's 1996 modification proceeding.

Our holding that the Husband was precluded from contesting the modifiability of the

alimony award is further supported by principles of judicial estoppel. Under the doctrine of judicial estoppel, where a party "states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation." *Melton v. Anderson*, 222 S.W.2d 666, 669 (Tenn. App. 1948). Although some decisions of this court have indicated that the doctrine of judicial estoppel applies only to willful misstatements of fact,[2] the courts of this state also have recognized that the doctrine may preclude parties from maintaining inconsistent legal positions in judicial proceedings. *See Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. App. 1968). Our supreme court recognized this latter principle in *Stearns Coal & Lumber Co. v. Jamestown R.R. Co.*, 208 S.W. 334 (Tenn. 1919), wherein the court explained:

> While the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict, yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding. *Stamper v. Venable*, 117 Tenn. 557, 97 S.W. 812 [(1906)].
>
> It has twice been held by this court that one who sues a corporation as such thereby admits the legality of its incorporation, and is thereafter estopped from denying such legal organization in that suit. *Lillard v. Porter*, 2 Head (39 Tenn.) 177 [(1858)]; *Bristol [Bank &] Trust Co. v. Jonesboro [Banking &] Trust Co.*, 101 Tenn. 545, 48 S.W. 228 [(1898)].
>
> Another illustration of this rule is found in *Norfolk [& Ocean View Ry.] Co. v. Consolidated Turnpike Co.*, 111 Va. 131, 68 S.E. 346 [(1910), *error dismissed*, 228 U.S. 326 (1913)], where an assignee of a condemnor in the first suit relied on the validity of the condemnation, and in the latter suit undertook to challenge the condemnor's right of eminent domain.

*Stearns Coal & Lumber Co.*, 208 S.W. at 334-35; *see also Montgomery v. Nicely*, 301 S.W.2d 379, 382 (Tenn. App. 1956) (holding that complainant who invoked jurisdiction of chancery court to establish boundary line was later estopped to deny court's authority to grant relief sought).

Since the *Stearns Coal & Lumber Co.* decision, the supreme court has further distinguished between judicial estoppels arising from sworn statements and those arising from the assertion of inconsistent legal positions. *Allen v. Neal*, 396 S.W.2d 344, 346 (Tenn. 1965). Judicial

---

[2]*See, e.g., Woods v. Woods*, 638 S.W.2d 403, 406 (Tenn. App. 1982).

estoppels arising from sworn statements "are based on public policy upholding the sanctity of an oath" and do not require a showing of "prejudice to [the] adverse party by reason thereof." ***Id.***; *see also Monroe County Motor Co. v. Tennessee Odin Ins. Co.*, 231 S.W.2d 386, 390 (Tenn. App. 1950). In contrast, judicial estoppels arising from the assertion of inconsistent legal positions are founded on the administration of justice and seek to prevent litigants from unfairly benefitting from a strategic shift in legal position. *Allen v. Neal*, 396 S.W.2d at 346. Thus, the application of this latter doctrine, sometimes referred to as the doctrine of "inconsistent position," *id.* at 346-47, is particularly appropriate where a party has successfully maintained an inconsistent legal position in prior litigation. *See Hamilton Nat'l Bank v. Woods*, 238 S.W.2d 109, 114 (Tenn. App. 1948); *see also Home Ins. Co. v. Leinart*, 1986 WL 6847, at *1 (Tenn. App. June 20, 1986) (citing *Olin's, Inc. v. Avis Rental Car Sys.*, 104 So. 2d 508 (Fla. 1958)). The courts may invoke principles of judicial estoppel whenever appropriate, regardless of whether the parties have raised it in their pleadings. *Rachels v. Steele*, 633 S.W.2d 473, 477 (Tenn. App. 1981); *Gilley v. Jernigan*, 597 S.W.2d 313, 318 (Tenn. App. 1979).

In accordance with the foregoing authorities, we conclude that principles of judicial estoppel precluded the Husband from asserting that the alimony award in this case was not modifiable. In the 1994 modification proceeding, the Husband successfully maintained the legal position that the alimony award was modifiable. The Husband benefitted significantly from the assertion of this legal position in that the Husband was relieved of a substantial portion of his alimony obligation to the Wife. Under these circumstances, the Husband could not, as a matter of law, "be allowed to advantage himself by taking an inconsistent" position in the 1996 modification proceeding. *Allen v. Neal*, 396 S.W.2d at 346 (quoting *Johnston v. Cincinnati, New Orleans & Tex. Pac. Ry. Co.*, 240 S.W. 429, 436 (Tenn. 1922)).

Having concluded that the Husband may not relitigate the modifiability of the alimony award, we next address his contention that the record fails to demonstrate a sufficient change of circumstances to justify the trial court's modification of the award. *See Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. App. 1990) (indicating that modification in alimony must be supported by evidence of material change in circumstances not contemplated at time of prior decree). Again, we conclude that the Husband's contention is without merit. At the 1996 modification hearing, the

undisputed evidence revealed that, while the Wife's needs had increased somewhat, the Husband's ability to pay had increased substantially since the 1994 modification hearing. At the time of the most recent hearing, the Husband was earning $125,000 per year as a physician, which was even more than he earned while he was in private practice.

We recognize that a payor spouse's increase in income, by itself, ordinarily does not constitute a material change of circumstances justifying a corresponding increase in the spouse's alimony obligation. *See, e.g.*, *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258, at *4 (Tenn. App. Oct. 3, 1996); *Mahoney v. Mahoney*, No. 03A01-9207-CV-00270, 1993 WL 789, at *3 (Tenn. App. Jan. 5, 1993) (citing *Norvell v. Norvell*, 805 S.W.2d 772 (Tenn. App. 1990)); *but see Bullers v. Bullers*, 1987 WL 10682, at *1 (Tenn. App. May 13, 1987) (affirming increase in alimony based upon substantial increase in husband's Air Force retirement income), *perm. app. denied* (Tenn. Aug. 3, 1987). As this court has indicated, "there is no rule of law, statutory or decisional, which entitles one . . . spouse to maintain a parallel lifestyle with the other" subsequent to a divorce. *Lawson v. Lawson*, 1989 WL 105652, at *1 (Tenn. App. Sept. 13, 1989); *cf. Raines v. Raines*, 1990 WL 115185, at **2-3 (Tenn. App. Aug. 13, 1990) (affirming trial court's order increasing alimony payments from $350 to $500 per month where husband's income increased significantly after divorce and where wife testified that her standard of living was same as when parties were married only because of support from her father), *perm. app. denied* (Tenn. Nov. 5, 1990).

In this case, however, the Husband previously sought, and was awarded, a modification of the alimony award which reduced by half the amount of alimony the Wife received each month. Inasmuch as the Wife was required to share the burden of the Husband's bad fortune, we think it only equitable that the Wife now benefit from the Husband's reversal of fortune. We find, therefore, that this case is distinguishable from cases in which the recipient sought an increase in alimony based upon increases in the obligor's income achieved after the divorce. *See Ford v. Ford*, 1996 WL 560258, at *4; *Mahoney v. Mahoney*, 1993 WL 789, at *3. Here, the Wife is not seeking to improve her standard of living consistent with that of the Husband based upon his recent increase in income. Instead, the Wife is seeking merely to maintain her current standard of living now that the Husband's income has returned to its former level.

Although we affirm the trial court's order extending the Husband's alimony obligation, we agree with the Wife's contention that the amount awarded was insufficient. At the modification hearing, the evidence demonstrated that the Wife had a need for alimony, and that the Husband had the ability to pay alimony, in an amount greater than the $750 awarded by the trial court. Accordingly, we modify the trial court's order to provide that, effective October 1996, the Husband shall begin paying the Wife alimony in the amount of $1000 per month instead of $750.

In affirming the trial court's order, as modified, we reject the Husband's argument that the trial court erred in extending the alimony award because the Wife failed to make a good-faith effort to rehabilitate herself. This argument is based on Tennessee Code Annotated section 36-5-101(d)(2), which provides that:

> An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

T.C.A. § 36-5-101(d)(2) (1996) (amended by 1993 Tenn. Pub. Acts 243).

We conclude that this statute has no application to the present case because there is no evidence in the record that the award of alimony to the Wife was intended to be rehabilitative. *See* T.C.A. § 36-5-101(d)(1) (1996) (distinguishing awards for rehabilitative support and maintenance from alimony *in solido* and periodic alimony). In fact, the record suggests just the opposite. At the time the final divorce decree was entered, the Wife was fifty-eight years of age and had not worked outside the home in over thirty years. The final divorce decree did not describe the alimony awarded as being rehabilitative, and at the 1996 modification hearing, the Husband offered no testimony or evidence to support his contention that the parties intended for the award to be rehabilitative. We recognize that the "current statutes governing spousal support reflect a preference for temporary rehabilitative support as opposed to long-term support." *Wilson v. Moore*, 929

S.W.2d 367, 375 (Tenn. App. 1996) (citing T.C.A. § 36-5-101(d)(1)).  In this case, however, there simply is no evidence to support the Husband's contention that this award was ever designed to rehabilitate the Wife.

Finally, we affirm the trial court's decision to require the parties to pay their own attorney's fees.  The decision to award attorney's fees in divorce proceedings lies within the sound discretion of the trial court and will not be disturbed on appeal unless the evidence preponderates against the court's decision.  *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. App. 1992).  In this case, the Wife appears to have sufficient resources with which to pay her own attorney's fees, particularly in light of our affirmance of the trial court's alimony award, as well as the Wife's other sources of income and the property awarded to her in the original divorce proceeding.  Accordingly, we conclude that the trial court did not err in declining to award the Wife her attorney's fees incurred in this modification proceeding.  *Thompson v. Thompson*, 797 S.W.2d 599, 605 (Tenn. App. 1990).

As modified, the trial court's judgment is affirmed and this cause remanded for further proceedings.  Costs of this appeal are taxed to the Husband, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)