## CIRCUIT COURT OF FAIRFAX COUNTY

Teleglobe USA, Inc.

v.

USA Global Link, Inc., et al.

Case No. (Chancery) 158049

BY JUDGE JONATHAN C. THACHER

April 8, 1999

This matter came before the Court on February 5, 1999, on Defendants' Plea in Bar. During the hearing, Defendants moved that the case be transferred from Equity to Law. I suggested that both counsel submit a three-page brief regarding that issue before I ruled on that issue. For the reasons discussed below, Defendants' motion is denied.

During the Plea in Bar hearing, Defendants argued that Plaintiff's claims should be dismissed because: (1) the Doctrine of Primary Jurisdiction barred Plaintiff's Bill of Complaint; and (2) Plaintiff's implied contract claims are barred because a written contract governs the dispute. The Court summarily overruled Defendant's Plea in Bar on February 5, 1999. As to Defendant's latter argument, the Court was not (and is not yet) convinced that a written contract governs the dispute between Plaintiff and Defendant. Be that as it may, Plaintiff is still entitled to its quantum meruit, quasi-contract claims. Therefore, this case should remain on the equity side of the Circuit Court.

For these reasons, Defendants' Motion for Transfer from equity to law is denied.

December 10, 1999

This case came before the Court on Defendants' Teleglobe USA, Inc., and Teleglobe, Inc., Demurrer as to Counts I and II of Global USA's First Amended Cross-Bill. I have reviewed the briefs of both counsel regarding this issue. While the applicable case law suggests that a Cross-Bill is not deficient merely because it contains some defenses, there is still a requirement that a Cross-Bill seek affirmative relief. After reviewing the First Amended Cross-Bill, I find that Counts I and II of the Cross-Bill are repetitive of USA Global Link, Inc.'s affirmative defenses and seek nothing more than a judgment declaring that those defenses are valid.

The Demurrer by Teleglobe USA, Inc., to Counts I and II is granted with prejudice as to both Teleglobe USA, Inc., and Teleglobe, Inc.

January 21, 2000

This matter came before the Court on December 17, 1999, on Third-Party Defendant Telecommunicatiebedrijf Suriname's ("Telesur") Renewed Motion to Dismiss and to Quash Service of Process. After careful consideration of counsels' arguments and submitted briefs, the Motions to Dismiss and Quash Service of Process are denied. The Court finds that Telesur has made a general appearance and has consented to jurisdiction.

The general appearance issue has been addressed numerous times by the Virginia Supreme Court. In *Kiser v. Amal. Clothing Workers*, 169 Va. 574 (1938), the Court held, "There may be a special appearance for the purpose of making objections to defects, but *granting or accepting a continuance*, or a motion to quash for other reasons than defects in the process or return, amount to a general appearance . . . ." (Italics added). In the present case, Telesur requested two extensions of time to respond and requested that its counsel be admitted *pro hac vice*. "An appearance for any other purpose than questioning the jurisdiction of the court . . . is general and not special, although accompanied by the claim that the appearance is only special." *Norfolk and Ocean View Railway Co. v. Consolidated Turnpike Co.*, 111 Va. 131, 136, 68 S.E. 346, 348 (1910), cited in *Gilpin v. Joyce*, 257 Va. 579, 515 S.E.2d 124 (1999).

Va. Code § 8.01-277 permits a Defendant who is served with defective service of process to file a motion to quash prior to or simultaneously with the filing of any pleading on the merits. The Court finds that the request for admission *pro hac vice* and two requests for extension of time to respond were

pleadings on the merits. Accordingly, the Motions to Dismiss and to Quash Service of Process are denied.

July 6, 2000

This matter came before the Court on May 26, 2000, on Third Party Defendant's ("Telesur") Plea in Bar and its Demurrer to Counts III, IV, V, and VI of Defendant/Cross-Plaintiff's ("Global Link") Amended Cross-Bill. For the reasons set forth below, the Plea in Bar and Demurrer to Counts III, IV, and V are overruled. Global Link withdrew Count VI to the Amended Cross-Bill.

In the Plea in Bar, Telesur argued that it was entitled to sovereign immunity pursuant to the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1603. Telesur contends that it has not waived sovereign immunity and that its call termination services do not fall under the "commercial activity" exception of the FSIA.

Telesur has sufficiently shown through deposition testimony and by affidavit that Telesur is a "foreign state" and is therefore subject to the FSIA. This Court agrees with Telesur that it has not explicitly waived its immunity and recognizes that the legislative history of the FSIA provides three examples of when implicit waiver occurs: (1) the foreign state has agreed to arbitration in another country, (2) the foreign state has agreed that a contract is governed by the law of a particular country, and (3) the foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity. See *In re Tamimi*, 176 F.3d 274 (4th Cir. 1999). However, because the Court finds that Telesur's call termination services constitute a commercial activity that caused a direct effect in the United States pursuant to the FSIA, this Court does not need to address whether or not Telesur's multiple filed motions and general appearance in this case constitute a responsive pleading and therefore an implicit waiver.

The controlling FSIA provision, 28 U.S.C. § 1605(a)(2) provides:

[a] foreign state shall not be immune in any case in which the action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

In determining whether a sovereign's act is a "commercial activity," the United States Supreme Court has held that when a foreign government acts, not as a regulator of a market but in the manner of a private player within it,

the actions are commercial within the meaning of the FSIA. See *Republic of Argentina v. Weltover*, 504 U.S. 607 (1992). A Virginia federal court outlines the "private party test" to clarify "commercial activity" in *LeDonne v. Gulf Air, Inc.*, 700 F. Supp. 139 (1988). The court stated that the question of whether or not acts are commercial turns on whether the activity in question could be legally engaged in by a private party as well as a government or whether it could only be appropriately pursued by a government. The court stated that it should also ask as a check whether the activities in question are customarily engaged in for profit. Telesur provides call termination services for profit to other companies around the world, acting as a private player in the telecommunications industry. Therefore, this Court finds that Telesur's alleged act of placing fraudulent telephone calls is an act in connection with a commercial activity.

Pursuant to the FSIA, Telesur's act must also have a direct effect in the United States in order for this Court to maintain jurisdiction. Telesur's alleged activity resulted in inflated charges to Global Link. Because Global Link, a U.S. corporation, allegedly suffered direct financial loss as a result of Telesur's act, that act has caused a direct effect in the United States.

The Court finds that the alleged acts of placing fraudulent phone calls to inflate Global Link's charges constitutes an act based upon a commercial activity that has a direct effect in the United States. Telesur is therefore exempt from sovereign immunity pursuant to the exception outlined in 28 U.S.C. § 1605(a)(2). The Court subsequently finds Telesur's tort exception defense inapplicable.

Next the Court deals with Telesur's demurrer to Counts III, IV, V, and VI of the Amended Cross-Bill. Because Global Link withdrew Count VI, only the remaining three counts will be addressed below.

Telesur demurs to the allegations of fraud (Count III), violation of the Virginia Consumer Protection Act (Count IV), and implied indemnity (Count V). In considering Telesur's demurrer, all of the material facts in the Amended Cross-Bill must be taken as true. See *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993).

In order to prove fraud, a plaintiff must show (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled. See *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998). The Virginia Supreme Court has held that deceitful conduct is equivalent to an allegation of a verbal misrepresentation of a material fact. See *Van Deusen v. Snead*, 247 Va. 324 (1994). Global Link's Amended Cross-Bill alleges deceitful conduct on the part of Telesur, namely

generating false calls to artificially inflate Global Link's invoice charges and therefore appropriately pleaded this element of fraud. Global Link also properly pleaded the "intentionally and knowingly" and "intent to mislead" elements of its fraud claim. It is inherent in the entire alleged scheme that Telesur intended to mislead Global Link, and Global Link specifically states in the Amended Cross-Bill that the scheme was "willful, wanton, and malicious." Global Link satisfied the reliance element by showing how it relied on the validity of Telesur's false telephone calls by Global Link's own acts of connecting the calls and providing a U. S. dial tone for the calls. Finally, Global Link alleged past and potential future monetary damages. Thus, the Court finds that Global Link's Amended Cross-Bill sufficiently alleges the six required elements of fraud.

The Virginia Supreme Court has found that allegations that do not reveal the identities of the defendant's agents or employees alleged to have perpetrated a fraud or the details of the time and place where the fraudulent acts occur are insufficient to state a cause of action. See *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849 (1978). However, Virginia's Eastern District Court has held that the requirement that fraud be pleaded with specificity is necessarily relaxed when information necessary to the plaintiff's claim is solely within the defendant's control. See *Sweeney Co. v. Engineers-Constructors, Inc.*, 109 F.R.D. 358 (E.D. Va. 1986). Global Link has alleged the "who, what, when, where, and how" of the fraudulent scheme and is only absent specific names of the perpetrators because that information is solely within Telesur's control. Based on the analysis in *Sweeney*, this Court finds that Global Link has pleaded its fraud claim with specificity. Therefore, the demurrer to Count III is overruled.

Count IV of the Amended Cross-Bill alleges violations of the Virginia Consumer Protection Act ("VCPA"). The applicable portion of the VCPA is Va. Code § 59.1-200(14), which states:

> [t]he following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful . . . (14) Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

Global Link has stated an actionable VCPA claim because Telesur is a "supplier" under the definition of the VCPA. Telesur engaged in consumer transactions by reselling its call termination services to Global Link. The Court disagrees with Telesur's contention that Global Link is a competitor of

Telesur. While Global Link does state in its Amended Cross-Bill that it is a competitor of Telesur in the telecommunications industry, the basis for the VCPA violation is Telesur's provision of call termination services, of which Global Link was a consumer. The VCPA claim is also applicable because much of the activity relating to Telesur's alleged fraudulent scheme occurred or has had an effect in the Commonwealth of Virginia. Teleglobe USA, the collecting agency and first party plaintiff in this action, is located in McLean, Virginia, and initiated the lawsuit in this Court. Further, Global Link's Amended Cross-Bill specifically alleges that it has sustained injury and may sustain future injury within the Commonwealth of Virginia as a result of Telesur's acts. Therefore, Global Link has stated a valid claim that Telesur violated the VCPA, and Telesur's demurrer to Count IV is overruled.

Count V claims implied indemnity against Telesur. Virginia has recognized that claims for indemnity may arise in non-contractual cases. See *Philip Morris, Inc. v. Emerson*, 235 Va. 380 (1988). This Court has stated that implied indemnity "arises between parties from equitable considerations . . . [where] the indemnitee is liable to the injured party because of some positive duty created by statute or common law; however, the actual cause of injury to the third party was the act of the indemnitor." *Sanderling v. Donohoe Co.*, 47 Va. Cir. 345, 346 (Fairfax County, 1998). Global Link's allegations squarely fit within this definition of implied indemnity. First, Global Link states in its Amended Cross-Bill that Teleglobe USA and Global Link entered into a contract for services. Teleglobe USA has filed a complaint against Global Link for breach of contract, making Global Link liable to Teleglobe USA through its contractual obligation and duty to pay Teleglobe USA. Global Link alleges that the actual cause of the injury to Teleglobe USA was the fraudulent inflation of charges by Telesur, making Telesur's act the real cause of Teleglobe USA's injury. Under these circumstances that are alleged in the Amended Cross-Bill, Global Link has stated a valid implied indemnity claim, and Telesur's demurrer to Count V is therefore overruled.

For the reasons set forth above, Telesur's Plea in Bar is overruled. Telesur's Demurrer to Counts III, IV, and V of Global Link's Amended Cross-Bill is also overruled, and Count VI is withdrawn.